## MICHAEL VACENDAK *v.* STATE OF INDIANA.

[No. 674S121. Filed January 22, 1976. Rehearing denied March 12, 1976.]

*R. Cordell Funk, Sachs, Hess & Funk,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Douglas W. Meyer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Michael Vacendak, was convicted on November 14, 1973, of kidnapping one Brenda Burkland of Hammond, Indiana. Testimony at trial revealed that the two first met in October, 1972, at a restaurant near the high school in which the prosecutrix was enrolled. Between October, 1972, and January, 1973, they met numerous times at the school, at the restaurant, at the Appellant's place of employment, and on several occasions in the prosecutrix's home. The visits to the Burkland home were not known to or approved by the parents of the prosecutrix. The prosecutrix testified that there was nothing romantic between

them and that when they met they generally discussed the parental problems they each had.

Between the first of the year and July 15, 1973, they did not see each other. On that latter day, a neighbor informed the prosecutrix that the appellant wished to see her. Because her parents were home and because she had to leave for work, she told her neighbor to tell the Appellant to meet her as she walked to work.

The prosecutrix was to be at work at 4:00 p.m. She left her house at about 3:50 p.m. and began walking the three or four blocks to the store in which she clerked. The Appellant suddenly appeared out of some bushes along the sidewalk. After some casual conversation, he offered to give her a ride to work. Since she was running late, she accepted. They got into a two-door sedan driven by a friend of the Appellant, John King. King was referred to as "Chuck" throughout the following events.

The prosecutrix rode in the rear seat, the Appellant and King in the front. When the car reached the corner across from the store in which the prosecutrix worked, the Appellant refused to let her out of the car. According to the prosecutrix's testimony,

". . . I said well, I would walk from here and he said your—you are not going to work you are going with me on a little vacation or you may just go for the rest of your life. . . . You are not going to work you are going to call off and you are going to Bloomington."

The prosecutrix demanded to be let out of the car. King slowed down and asked the Appellant if he wanted to go through with it. The Appellant replied, "Never mind, just keep going."

They drove to the toll road a few blocks away and proceeded to Bloomington. The prosecutrix made no attempt to attract attention of the toll booth attendant. She testified that she did kick and cry hysterically during the trip. The Appellant admitted saying "I should have brought a club, it would

have made it a lot easier." No attempt to flee was made since the Appellant and King blocked the only two doors of the car.

The Appellant and King drank beer during the trip. There was testimony that all three stopped at a rest stop along the way to use the restroom facilities. The prosecutrix denied making this stop. She did say that they stopped at a self-service station just outside Bloomington, where King relieved himself. The Appellant, however, stayed in the car with the prosecutrix.

The prosecutrix was taken to a large house in the country-side in Monroe County. Later that night the Appellant had sexual intercourse with her, allegedly a rape. Just before daybreak, she left the house while King and the Appellant slept. She was picked up by one Steve Dowling, who took her to the house of a friend from which she called her parents.

I.

The Appellant's first challenges are constitutional in nature. Challenged are the mandatory penalty of life imprisonment provided by Indiana's kidnapping statute, Ind. Code § 35-1-55-1 (Burns 1975), and the breadth of that statute as it defines the crime of kidnapping.

Four grounds are asserted for the unconstitutionality of the life sentence imposed for kidnapping: that the sentence is disproportionate to the nature of the Appellant's acts; that it is disproportionate to the punishment of other crimes in this state; that it is disproportionate to the punishment of the same crime in other states; that the kidnapping is arbitrarily enforced and its mandatory penalty is thus unconstitutionally arbitrary.

The first three of these grounds are essentially based upon the prohibition of "cruel and unusual" punishment contained in the Eighth Amendment of the United States Constitution and Article 1, Section 16 of the Constitution of the State of Indiana. That section of our State Constitution expressly

provides that "penalties shall be proportioned to the nature of the offense." Article 3, Section 16 thus specifically provides for proportionality of a crime to a punishment, something the words "cruel and unusual" alone have been interpreted to include in our federal constitution. *See Weems* v. *United States,* (1910) 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed 793.

This court has upheld the sentence of life imprisonment for the crime of kidnapping in the face of cruel and unusual proportionality challenges. *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216; *Cox* v. *State,* (1931) 203 Ind. 544, 177 N.E. 898, rehearing denied, (1932) 181 N.E. 469. The arguments presented here do not merit a different result.

The record reveals that this crime was carried out by at least an implied threat of violence. The asportation covered a great distance and was separated from the subsequent alleged rape by a period of hours. The nature of the particular acts involved with this crime are thus not as innocuous as the Appellant would have us believe. The severity of punishment compared to other crimes can be explained by the degree to which the legislature has deplored this crime. See the discussion of kidnapping in *Cox* v. *State, supra.* While it is true that only three states mandate life imprisonment for simple kidnapping, this is a potential sentence in a number of other states, and sentences of twenty-five or more years are possible in still more. The Appellant's claim of arbitrariness merely couches his other arguments in different terms and does not acquire merit by its different label.

The determination of appropriate penalties for crimes committed in this State is a function properly exercised by the legislature. *Rowe* v. *State,* (1974) 262 Ind. 250, 314 N.E.2d 745; *Lowe* v. *State,* (1973) 260 Ind. 610, 298 N.E.2d 421. The Judiciary will disturb such a determination only upon a showing of clear constitutional infirmity. We do not find such here.

The Appellant also asserts that the kidnapping statute is overbroad. The Appellant contends that the only crime committed here, if any, is that of rape. As the Appellant interprets it, the kidnapping statute permits any coerced movement to support a charge of kidnapping, no matter how intertwined or incidental the movement is to another act or crime.

In support of this claim the Appellant cites *Papachristou* v. *City of Jacksonville,* (1972) 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, which is concerned with vagueness rather than overbreadth. Also cited are *Livingston* v. *Garmire,* (5th Cir. 1971) 437 F.2d 1050, and *Marks* v. *City of Anchorage,* (Alaska 1972) 500 P.2d 644, which discuss overbreadth and vagueness in relation to expressive conduct. It has recently been held that the overbreadth doctrine extends no further than protection of first amendment freedoms. *Moose Lodge* v. *Irvis,* (1972) 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627.

The Appellant's contention fails, however, for still another reason:

"Appellant suggests that this court adopt a principle whereby any restraint and transportation of the victim would be considered only as an integral part of the charge of rape and not as a separate charge of kidnapping. In other words, that because the rape in this case also included a kidnapping or transportation under restraint he should not be prosecuted separately for that crime. Carrying the argument further it seems the victim was not carried very far to constitute a real kidnapping and it was merely incidental to the rape. Of course, the argument fails because a transportation or kidnapping is not necessarily involved in a rape. It might likewise be urged in any crime of violence that the victim was touched only 'lightly' and only incidental to the main crime, and therefore should not be subject to a separate or included charge of assault and battery with intent. In such cases as this the attacker is guilty of a compound crime as happens in instances when a victim is also killed in the commission of another crime, or also kidnaps, while committing a robbery. We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound

or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts." *Wilson* v. *State,* (1970) 253 Ind. 585 at 592, 255 N.E.2d 817 at at 821-822.

The Appellant's overbreadth claim is unfounded. The statute is valid on its face.

## II.

The Appellant next contends that the trial court erred in finding him competent to stand trial. At the Appellant's request, a sanity hearing was held after the trial began. One of two court-appointed doctors reported and testified that in his opinion the Appellant was competent to stand trial and was faking his irrational acts. A second doctor agreed that this was entirely possible, but nonetheless concluded that he was not competent to stand trial. Defense counsel submitted an affidavit stating that the Appellant was not cooperating and that, in counsel's opinion, he was not competent to stand trial. The Appellant's brother testified that the Appellant had undergone behavior changes and the prosecutrix testified that he was "out of it," although she had only limited opportunity to observe him after the occurrence of the crime. A third doctor concluded that it was conceivable that the Appellant would enter a "full blown psychosis" and that the line of sanity was blurred for him.

The Appellant also took the stand at this competency hearing and the trial court was thus able to observe his mannerisms and demeanor. In response to a question of whether or not he could rationally and intelligently talk to his trial counsel in the preparation of his case, the Appellant said "Yes." Following the conclusion of the trial, the Appellant admitted that he had attempted to fake insanity.

The evidence is sufficient to support the finding of the trial court on this issue.

### III.

The Appellant next contends that error was committed when the trial court failed to grant the Appellant a new trial based upon newly-discovered evidence. The State contends that the Appellant's motion for a new trial was not timely filed.

The Appellant filed his "Supplement to Motion to Correct Errors and For a New Trial Pursuant to Indiana Criminal Rule 16 and Trial Rule 59" on January 21, 1974. The verdict on the cause had been rendered on November 14, 1973, with judgment pronounced the next day. Sentencing was pronounced on November 20, 1973.

Criminal Rule 16 was binding on the Appellant and required him to file a motion to correct errors within sixty days after sentencing. January 21, 1974, was sixty-two days after November 20, 1973. But in accordance with Trial Rule 6, made applicable to this proceeding by Criminal Rule 21, Saturday, January 19, 1974, and Sunday, January 20, 1974, the sixtieth and sixty-first days, are not counted. The motion was filed on the last day of the time permitted.

The newly-discovered evidence in this case consists of two things. First, as Appellant states,

"[t]he fact that defendant, while possibly still suffering from some degree of mental unbalance, was purposely faking insanity and could, at least, cooperate with his counsel enough to take the stand and testify in his own behalf is new evidence sufficient to cause a different result upon a new trial."

Second, Appellant alleges that a polygraph examination taken by the chief defense witness subsequent to the trial supported that witness's version of the facts. This witness repeated his testimony at the polygraph examination and the examiner concluded he was telling the truth.

The standard for granting a new trial upon newly-discovered evidence is a rigorous one.

"An application for a new trial, made on the ground of newly discovered evidence, must be supported by affidavit and such affidavit or affidavits must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case and (9) that it will probably produce a different result. *Cansler* v. *State,* (1972) 258 Ind. 450, 281 N.E.2d 881; *Tungate* v. *State,* (1958) 238 Ind. 48, 147 N.E.2d 232." *Emerson* v. *State,* (1972) 259 Ind. 399 at 406-407, 287 N.E.2d 867 at 871-872.

The Appellant's assertion that he was purposely faking insanity and in reality could have cooperated with his counsel and taken the stand does not meet this standard. The fact that the Appellant was faking insanity does not constitute evidence relevant or material to the crime charged. The testimony of the Appellant which would be available on retrial is cumulative and was known and available at the time of trial.

The motion to correct errors indicates that the Appellant's testimony would be consistent with that of John King, and the Appellant's brief indicates that it would be similar to it. By the Appellant's own admission, the evidence to be gained by his testimony upon retrial would be merely cumulative. Such evidence cannot support a motion for a new trial. Moreover, any testimony which the Appellant could give upon retrial could have been given at the initial trial. It would be a serious miscarriage of justice to permit a defendant to take advantage of his refusal to cooperate in order to gain a new trial. We have previously held that a defendant in possession of evidence, but who fails to bring forth such evidence at trial, cannot subsequent to an unfavorable verdict bring forth that evidence and assert it as the basis for a new trial. *DeShone* v. *State,* (1934) 207

Ind. 380, 193 N.E. 223. *See* 66 C.J.S. *New Trial* § 103 (1950). This principle is applicable in the instant case.

The Appellant's second allegation regarding the result of the polygraph examination is also without merit. We have held that the degree of accuracy of these tests, currently rated at eighty per cent,[1] is not sufficient to mandate their admission on the question of guilt or innocence. *Zupp* v. *State*, (1972) 258 Ind. 625, 283 N.E.2d 540, and *Reid* v. *State*, (1972) 259 Ind. 166, 285 N.E.2d 279, "clearly establish the principle that absent some form of waiver or stipulation by the parties, the results of polygraph examinations administered to witnesses or parties are not competent evidence in criminal prosecutions." *McDonald* v. *State*, (1975) Ind. App., 328 N.E.2d 436 at 440. Similarly, and absent some form of waiver, mention that a defendant took a polygraph examination, or facts leading to this conclusion, will not be permitted. *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130; *McDonald, supra.*

It would appear therefore that this second item of newly-discovered evidence is not sufficient to warrant a new trial since it would be inadmissible absent a stipulation by the parties. However, we need not review our position on polygraph examinations at this time. *Emerson, supra,* requires that the evidence be discovered after trial and also requires that due diligence be used in bringing evidence before the trial court. Here, six days elapsed between the time King was located and the time he testified. His testimony must have been known at that time and has not changed since. There appears no reason why he could not have taken the polygraph examination before the time he was to testify.

### IV.

The Appellant next contends that the State failed to comply with a discovery order granted by the trial court. The facts

---

1. C. McCormick, Law of Evidence, § 207 at 506 n.9 (2d Ed. 1972). See also *Robinson* v. *State*, (1974) Ind. App., 309 N.E.2d 833, 855 and 855 n.19.

giving rise to this allegation are clouded. Although other failures are alluded to, it is obvious that the Appellant bases a motion for a new trial on the failure of the State to supply him with information which might have enabled him to contact John King earlier than he did.

Two discovery motions were made. Appellant first requested the names, addresses and phone numbers of every State witness to the matter. This request was granted. Subsequently, the Appellant asked for the name and address of the person identified as "Chuck." The trial court denied this motion after it was advised that the State had no knowledge of the existence of any such information.

It appears that the State never did locate "Chuck," though a search was made in the Bloomington area. It further appears that the State did contact King's mother, but was unable to find King prior to his being located by Appellant's attorney. Neither King nor his mother were called by the State at trial.

There is no allegation that the State suppressed evidence or that the advice given the trial court was false. Nor does the Appellant dispute the State's contention that the identity of every witness it called at trial was given to him. Here there is no actual suppression, nor conduct of that nature. Moreover, since Appellant was able to locate King four days prior to trial, it is difficult to see any harm resulting from the foregoing facts. The Appellant has pointed out no instance in which the State failed to comply with the discovery order which was granted.

## V.

The Appellant next contends that the trial court arbitrarily revoked his bond and that this denial of release was so improper that he was denied a fair trial. Bond was initially set for the Appellant at $50,000. This was reduced to $5,000 upon his motion and was posted by real estate. Thereafter

the Appellant allegedly harassed the prosecutrix and engaged in an assault upon a police officer for which he was charged with disorderly conduct. The State presented affidavits to the trial court attesting to these matters, whereupon the judge summarily increased the bond to $50,000. This order was appealed to this court. *Vacendak* v. *State,* (1973) 261 Ind. 317, 302 N.E.2d 779. We held that a hearing must be afforded the Appellant before his bond could be raised. We then added:

> "In the case at bar, if the allegations of the State were to be established as true (a matter which we are in no way determining at this time), the trial court would have justification for exercise of his discretion in increasing the bond. The allegations of the State, if true, would demonstrate instability on the part of the appellant and a disdain for authority which the trial court within his discretion might well determine was sufficient to indicate that the appellant did not recognize the authority of the court to bring him to trial." 302 N.E.2d at 781.

The day after this opinion was filed, a hearing on the bond increase was held. At this hearing the State presented five witnesses; three police officers, the prosecutrix, and the father of the prosecutrix. The Appellant put on no witnesses. The testimony established that on one or more occasions Vacendak visited the prosecutrix where she worked, while he was armed with a bayonet. Viewed in the light most favorable to the State, the testimony showed harassment of the prosecutrix.

Moreover, the Appellant was charged with disorderly conduct after he kicked a police officer in the chest. The officer had been summoned to a service station where Vacendak had left his car unattended, blocking the aisle. The officer called a tow truck, which attempted to remove the vehicle. At this point the Appellant returned. After he made a phone call, he got in the car and refused to get out. When the officer tried to remove him, the Appellant began kicking. There was also evidence that the Appellant was arrested for driving without a license or registration.

The defense offered no contrary evidence. The judge reinstated the original bail, being particularly impressed with the fact that the Appellant had talked to the prosecutrix while armed.

The State carried its burden of proof in accordance with *Vacendak* v. *State, supra.* Reinstatement of the original bond was proper.

## VI.

The trial of this case began on November 5, 1973. At about 1:30 P.M., November 6, the Appellant was informed that a charge of rape had been filed against him in Monroe County. On November 7, alleging that the charge had been filed on September 28 and that the Lake County Jail had received a detainer for the Appellant that same day, the Appellant filed a motion seeking dismissal for failure to join the two charges. The Appellant finds error in the denial of this motion.

The Appellant's motion was based upon Ind. Code § 35-3.1-1-10 (Burns 1975), which provides for joinder of related offenses where both crimes are within the jurisdiction of the trial court:

"

*   *   *

(b) When a defendant has been charged with two [2] or more crimes, in two [2] or more indictments or informations and the two [2] or more crimes could have been joined in the same indictment or information under section 9 (a) (2) [subsecton (a) (2) of 35-3.1-1-9] of this chapter, the court, upon motion of the defendant, the prosecuting attorney, or on its own motion, shall join for trial all of such indictments or informations unless the court, in the interests of justice, orders that one or more of such crimes shall be tried separately. Such motion shall be made before commencement of trial on either of the crimes charged.

(c) A defendant who has been tried for one crime may thereafter move to dismiss an indictment or information for a crime which could have been joined for trial with the prior crimes under section 9 [35-3.1-1-9] of this chapter. The motion to dismiss shall be made prior to the second

trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

\* \* \*

(e) For purposes of this section, the term related crimes means two [2] or more crimes which are within the jurisdiction of the same court and which could have been joined in one prosecution."

Pursuant to this statute, joinder prior to the commencement of the Appellant's trial was possible. The trial court had jurisdiction over the subject matter and had personal jurisdiction over the Appellant. The remedy sought by the Appellant, however, was not the one provided by statute. The statute provides that future prosecution may be barred if joinder of charges pursuant to the statute is not made. The remedy of the Appellant would be to raise his conviction at any subsequent prosecution in Monroe County. This procedure was made unnecessary by the dropping of the Appellant's rape charge. We can find no error here.

## VII.

The Appellant next contends that his conviction is not supported by sufficient evidence. Our standard for review of this issue is well established:

"We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) [264] Ind. [1], 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538." *Matthew* v. *State,* (1975) 263 Ind. 672, 337 N.E.2d 821 at 822.

The statute under which the Appellant was convicted, Ind. Code § 35-1-55-1 (Burns 1975), provides:

*"Kidnapping*—Whoever kidnaps, or forcibly or fraudently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried way from any place within this

state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

Under this statute it is necessary to prove a forceful or fraudulent abduction, or an aggravated false imprisonment in order for the State to make its case. Here the asportation is obvious. Only the element of force or fraud is questioned.

Force is shown by the statements made by the Appellant previously set out. The appellant contends these cannot be characterized as "threats." Regardless of the label, the Appellant's statements, coupled with the restraint imposed by the blocking of the only two doors of the car, give rise to a reasonable fear of the use of force.

In addition, the statements of the Appellant when taken in conjunction with King's inquiry of whether the Appellant wanted to "go through with it" permit an inference of fraud. That exchange and the subsequent asportation indicate that the removal of the prosecutrix was planned before the offer of a ride to work was made.

Finally, the evidence shows an aggravated false imprisonment sufficient to satisfy the statute. According to the testimony of the prosecutrix, she was confined in the back seat of the car after demanding to be released. The only means of exit was blocked by Appellant and King. This along with the statements of Appellant, shows an imprisonment of the prosecutrix with intent to carry her away. Such a showing is sufficient to satisfy the requirements of the kidnapping statute.

The testimony most favorable to the State establishes three independent grounds, each supported by sufficient evidence, to sustain the conviction.

## VIII.

The Appellant finally contends that the trial court erred in rejecting Defendant's Instruction No. 3, which discussed

the State's burden of "beyond a reasonable doubt." It is asserted that this instruction was made necessary by the inadequacy of Court's Instruction No. 9. That instruction reads as follows:

"The doctrine of reasonable doubt is a practical rule of law for your guidance when engaged in administration of justice. It simply means that no person charged with a crime for which he is on trial shall be convicted of such charge until the evidence in the case establishes his guilt to a moral certainty, beyond a reasonable doubt, because in the absence of such proof, the presumption of innocence prevails and there can be no conviction.

A reasonable doubt is an actual and substantial doubt that arises in the mind after a fair and impartial consideration and weighing of all of the evidence and circumstances in the case. In order that there can be such doubt, it must be based upon some reason arising out of the evidence in the case or the lack of credible evidence as to some essential element of the charge. Therefore, the jury has no right to go outside of the evidence and circumstances of the case to hunt up doubts or excuses for acquitting the defendant; neither has the jury any right to act upon a mere whim, speculation, guess or surmise, nor to convict upon a mere possibility of guilt. Before the jury can find the defendant guilty as charged, the evidence must be such as to produce in the mind of each juror a conviction of guilt, such as you would be willing to act upon in any matter of the highest concern and importance to your own dearest interests and in such circumstances as where you would be free to act or not, as you might choose. When you become convinced beyond a reasonable doubt of the defendant's guilt, as charged, then it will be your duty to so find and return a verdict of guilty, but on the other hand, if you shall not become convinced beyond a reasonable doubt of the defendant's guilt as charged, then it will be your duty to find the defendant, not guilty, and return a verdict of not guilty."

This instruction largely follows accepted definitions of reasonable doubt. *See Greer* v. *State,* (1969) 252 Ind. 20, 245 N.E.2d 158; *Easton* v. *State,* (1967) 248 Ind. 338, 228 N.E.2d 6; *Smith* v. *State,* (1962) 243 Ind. 74, 181 N.E.2d 520; *Baker* v. *State,* (1956) 236 Ind. 55, 138 N.E.2d 641.

"It is not error to refuse to give an instruction the sub-

stance of which is covered by another instruction which is given. Hash v. State, (1972) [258] Ind. [692], 284 N.E.2d 770; Maxey v. State, (1969) 251 Ind. 645, 244 N.E.2d 650; Kennedy v. State, (1935) 209 Ind. 287, 196 N.E. 316." *Fuller* v. *State,* (1973) 261 Ind. 376, 304 N.E.2d 305 at 310. Defendant's Instruction No. 3 was adequately covered by Court's Instructions No. 1, 5 and 6 in addition to Court's Instruction No. 9. We can find no merit in the Appellant's contention.

Finding no error, we affirm the judgment of the trial court below.

Givan, C.J., Prentice, J., concur; DeBruler, Hunter, JJ., concur in result.

NOTE.—Reported at 340 N.E.2d 352.