ERNEST RICHARD TOPE *v.* STATE OF INDIANA.

[No. 376S76.  Filed April 28, 1977.]

*Richard J. Sullivan,* of Decatur, *Joseph A. Williams,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Ernest Richard Tope, was convicted of first degree murder on April 25, 1975. Sentenced to life imprisonment on July 14, 1975, the Appellant filed his motion to correct errors on September 12, 1975. This appeal is taken from the denial of that motion on December 18, 1975.

## I.

In order to conveniently set out the facts of this case, we consider first the Appellant's contention that the jury's verdict was not supported by sufficient evidence. Testimony at trial revealed that on April 13, 1974, at approximately 8:30 a.m., the partially clad body of one Cheryl Felger was found along Adams County Road 200 West, near Berne, Indiana. Members of the Adams County Sheriff's Department arrived a short time later. Photographs were taken of the decedent, of items of possible evidentiary value found near the body, and of footprints found in mud nearby. This mud was

allowed to dry and, later that day, plaster impressions were made of these footprints. Other items photographed were taken into possession, including a pack of Pall Mall cigarettes.

An autopsy of the decedent showed that she had been stabbed 90 to 95 times. Three penetrating wounds in the lungs were found to be the fatal wounds inflicted. The stage of digestion of the contents of the decedent's stomach placed the time of death at three to four hours after her last meal. During the early evening hours of April 13, police from Van Wert, Ohio, investigating a missing persons report on the decedent, called the Adams County Sheriff's Department to obtain a description of the body which had been found. When identification of the decedent was made, investigators turned to the Ohio town.

George Felger, father of the decedent, testified at trial that the last time he saw his daughter alive was between 7:30 and 8:00 p.m. (Ohio time), April 12, 1974, when she left home on a bicycle to see a friend. At 9:30 p.m., Mr. Felger saw this bicycle, leaning against a power pole at an intersection, while he was returning from town. Another daughter retrieved the bicycle a short time later. Mr. Felger testified further that the decedent, age 19 on the night in question, had finished her dinner around 6:30 p.m.

On the evening of April 16, 1974, Daniel Thornton, a custodian at the Adams County Courthouse and a friend of the Appellant, informed police that on the previous Sunday, April 14, 1974, the Appellant had come to him and had admitted killing the decedent. Thornton testified at trial that on that day the Appellant and he retraced the sequence of events which occurred on the night of the crime. They drove past the location at which the body was found, the bridge at which the Appellant stated he had thrown the murder weapon into a creek, the pond at which the Appellant stated he had washed his hands. The Appellant further stated to Thornton that he was concerned about losing a pack of cigarettes and that one Timothy Heckert had also participated in the killing.

As a result of Thornton's statement, Timothy Heckert was arrested at 1:30 a.m., April 17, 1974. Heckert subsequently testified at trial against the Appellant. He related that he and the Appellant had driven around together on the evening of April 12, and went to a Van Wert gas station to fasten a loose muffler on Heckert's car. Testimony by the Appellant and gas station employees corroborated this much of Heckert's story. Heckert asked for a pack of Pall Mall cigarettes for his companion, and found he could get none. Heckert testified that as they left the gas station, they saw a girl on a bicycle. According to that testimony, the Appellant said, "Let's pick up this girl and have a little fun."

Heckert went on to testify that he and the Appellant both had "natural" and "unnatural" sexual relations with their captive, that the Appellant stabbed the girl to death though Heckert had wanted to let her go, and that the appellant was in his stocking feet during the commission of the crime. Expert witnesses called by the prosecution found similarities between a plaster impression of a footprint at the scene of the crime and a sock seized from the Appellant. Also admitted into evidence was a knife located by police in a creek and identified by Heckert as the murder weapon.

Another prosecution witness testified that while a prisoner in the Adams County Jail he heard the Appellant say to another prisoner, "I killed that bitch." The Appellant attacks the reliability of this testimony, and that of Heckert and Thornton, as the main thrust of his sufficiency argument. It is well-established that this Court cannot judge the credibility of witnesses or weigh evidence. *Young* v. *State,* (1975) 264 Ind. 14, 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538. The factors affecting the credibility of these witnesses were fully presented to the jury. Its judgment of their veracity must stand.

This Court has held that a defendant may be convicted on the uncorroborated testimony of one witness. *Franks* v.

*State,* (1975) 262 Ind. 649, 323 N.E.2d 221; *Glover* v. *State,* (1970) 255 Ind. 304, 263 N.E.2d 723. Had Heckert been the State's only witness, the jury's verdict would be sustained. We find the evidence in the record sufficient to sustain that verdict.

## II.

Paragraph 1 of the Appellant's motion to correct errors urges that the trial court erred in admitting into evidence State's Exhibits 20, 21, 22, and 23, color photographs of the victim lying on an autopsy table. The Appellant argues in his brief that three other photographs of the victim taken at the scene of the crime were sufficient to prove "any necessary elements of the offense" and that their relevance and materiality was not established properly since they were not admitted into evidence during the testimony of the pathologist who conducted the autopsy.

We note first that the Appellant voiced no objection at trial based upon the order of proof. He has therefore waived any argument based upon the point in time at which the photographs were admitted. A defendant cannot give one reason for objection at trial and another on appeal. *Jones* v. *State,* (1973) 260 Ind. 463, 296 N.E.2d 407. Even if this waiver is overlooked, the Appellant's argument is self-defeating. If the testimony of the pathologist would render the photographs relevant and material, that testimony would cure any error in the order of proof. *See Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264.

The photographs in question were relevant to prove the elements of purpose and malice, as the victim had been repeatedly stabbed. *Shackleford* v. *State,* (1976) 264 Ind. 698, 349 N.E.2d 150. They elucidated oral testimony given at trial by the pathologist and police who described the nature of the wounds. One witness had attempted to sketch a drawing depicting the victim's wounds but found the wounds too numerous to permit it. Such photographs are admissible notwithstanding elements of repetition

and unpleasantness. *Shackleford* v. *State, supra; Cowell* v. *State,* (1975) 263 Ind. 344, 331 N.E.2d 21.

## III.

Also admitted into evidence at trial were two wash cloths and two pairs of socks which were seized by police after a search of the Appellant's home. The Appellant contends that this search and the resulting seizures were illegal because the affidavit upon which the search warrant was based did not state sufficient facts to determine whether the hearsay information it contained was reliable.

Pursuant to statute, an affidavit in support of a search warrant may be based upon credible hearsay. Ind. Code § 35-1-6-2 (Burns 1975). To guarantee this credibility, that statute provides in part:

"When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person, named or unnamed, and it shall contain the following:

(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge of the credible person."

It is asserted by the Appellant that the affidavit in this case did not provide "facts within the affiant's knowledge as to the credibility of the credible person."

The pertinent parts of the affidavit in question, written by Deputy Sheriff Thomas Coolman, read as follows:

"The undersigned affiant swears upon oath that he believes and has good cause to believe that on the 12th day of April, 1974, at and in the County of Adams and State of Indiana, one Cheryl Ann Felger was stabbed and mortally wounded in said County and State on said date. The undersigned bases his belief on the fact that he did witness the body of said girl in said County and State and did further make investigation concerning said offense.

The undersigned further says that in his investigation he has had cause to talk with one Timothy Allen Heckert

whom he has learned was with one Ernest Richard Tope which said two (2) defendants did commit the offense as stated above. The undersigned bases his belief and cause of belief on the fact that said Timothy Allen Heckert did give him a complete statement as to the commission of the offense which statement was received at 2:50 o'clock A.M. on the 17th day of April, 1974.

Affiant further says that he learned from said Timothy Allen Heckert that the clothing, being a pair of pants, shirt, stockings, shoes and various other items of personal clothing, worn by the Defendant, Ernest Richard Tope, at the time of the commission of said offense, is now located at the home of said Ernest Richard Tope.

The home and family dwelling of the Defendant, Ernest Richard Tope, is located at 251 South Second Street, Decatur, Adams County, Indiana, and being further described as a two-story gray shingled house at the corner of Second and Adams Street in said City and being further described as apartment four therein. Based upon the above information, affiant believes that said items of clothing are currently located in said premises.

Affiant further says that the said Timothy Allen Heckert spoke to him with personal knowledge of the matters and facts contained herein and that he has personally substantiated the story of said Timothy Allen Heckert and has found the information received from him to be reliable, credible and accurate."

We do not think that the information related in this affidavit is insufficient to permit a magistrate to perform his independent function. The hearsay involved here was the statement by Heckert, in his confession to police, that the Appellant was also involved in the crime. The disclosure of the credible person's identity and the fact that he confessed are indications of reliability. The affidavit further stated that, based upon his personal investigation of the crime, the affiant felt such person was speaking with personal knowledge of the facts of the crime. Heckert's confession was described as "complete" and, while independently verified facts related by him could have been included in the affidavit, we think the facts before the magistrate were enough to justify his inference that Heckert was credible. *Riddle* v. *State*, (1971) 257 Ind. 501, 275 N.E.2d 788.

## IV.

The Appellant has also raised a number of contentions which center on the results of two polygraph tests of Timothy Heckert. The first test was conducted on April 14, 1975. The polygraph operator found "some problems" with the results of this test, and expressed a desire to run more tests. The second test was one week later, the day before trial commenced. As a result of this second test, alone or in conjunction with the first test, the polygraph examiner apparently concluded that Heckert had not told the "complete truth."

At the close of the State's evidence, the Appellant moved for judgment on the evidence, based upon the allegation that Heckert had perjured himself. The Appellant also moved in the alternative that the results of the polygraph tests be made known to the jury or that Heckert's testimony be stricken. The Appellant urges error in the denial of this motion, in the granting of a prosecution motion *in limine* which prohibited mention by the defense of the polygraph tests, and in the denial of a defense motion for mistrial based upon "the conduct of the prosecution in using tainted evidence."

The bulk of the argument presented in support of these contentions is a broadside attack on Heckert's credibility. Apparently, it is being argued that if all the other factors affecting the witness's credibility were before the jury, we may as well have the polygraph results there too. This Court has consistently held that, absent some sort of waiver or stipulation by the parties, the results of polygraph examinations of witnesses or parties are not admissible in criminal prosecutions. *Vacendak* v. *State*, (1976) 264 Ind. 101, 340 N.E.2d 352, and cases cited therein.

The polygraph examinations in question were conducted at the request of the prosecutor, who wished to be aware of all the facts he could before entering into any agreement with Heckert for his testimony. When the operator of the polygraph, in the opinion of the prosecutor, "vascillated" in

his conclusions, the results were not relied upon: "I made my own decision after extensive examination of this witness and I concluded that he was telling the truth." Despite amorphous claims of prosecutorial misconduct in the Appellant's brief, we can find no error on this basis. Nor do we find error by the trial court here.

## V.

The trial court also refused to allow testimony by a defense expert witness that the blood of the decedent contained barbiturates. This ruling was based upon the view that there was no probative value to such evidence. It is now asserted that this ruling was in error.

It has been suggested in the Appellant's argument here that the proffered testimony *might* have established that the drug in question was taken after the time of death asserted by the prosecution. It is further urged that the action of the trial court foreclosed "the possibility that Dr. Forney's testimony would be of probative value on the issue of the time of the victim's death, the time she ingested the drugs, her activities prior to death. . . ." All this is, however, speculation. The Appellant's offer to prove did not state that any of these things would be shown.

"An offer of proof must be certain and must definitely state the facts sought to be proved, and must show the materiality, competency, and relevancy of the evidence offered." 28 I.L.E. *Trial* § 45 at 44 (1960). Since the Appellant's offer to prove did not show the relevancy or materiality of the proffered testimony, we can find no abuse of discretion in the trial court's ruling.

## VI.

The fifth argument presented in this appeal is a shot-gun argument of some eighty-three pages which includes the sufficiency of the evidence argument previously discussed and contends, on the basis of eight other allegations, that

the Appellant was denied a fair trial. We have already dealt with several of these allegations directly or indirectly. The polygraph issue is once again raised, as is the question of whether testimony regarding barbiturates in the victim's blood should have been admitted. We see no need to rehash these questions. Also raised are factors affecting the credibility of witnesses Heckert and Thornton. We again point out that these factors, including Heckert's plea-bargain arranged in exchange for his testimony, were presented to the jury. This complied with the law. *See Newman* v. *State,* (1975) 263 Ind. 569, 334 N.E.2d 684. We see no need for further discussion here either.

It is also asserted that the Appellant through his attorneys, offered to allow the State to administer to him sodium pentothal or "any other truth serum" and to question him prior to trial. The Appellant was permitted to testify to this effect at trial. We find no merit to the argument that the trial court should have ordered such a procedure.

Two allegations included in this argument present no demonstrated prejudice to the Appellant. It is asserted that the State "had the Federal Bureau of Investigation break its policy of not having its experts conduct tests on evidence after State experts have conducted the same tests." The record shows that state agencies asked the FBI to conduct the tests in question when it appeared that the state police officer who had already run the tests would be unavailable to testify. The fact that this officer was later able to testify does not show in any way that the Appellant was denied a fair trial.

It is further contended that the State attempted at trial to have a police officer testify as to comparisons between footprints at the scene of the crime and an impression of the Appellant's foot. We think it worthy of note that this attempt was unsuccessful. The trial court held that the witness was not qualified to make such a comparison and did not permit such testimony. The burden

is upon an appellant to show that error complained of was prejudicial. *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351.

The final contention of this argument which we will address here is that the "State during trial repeatedly limited direct examination of its witnesses to selected evidence which in its opinion tended to incriminate defendant and deliberately avoided any reference to evidence it thought would not incriminate defendant, and when defense counsel attempted to cross examine concerning such repressed evidence, the State objected to it as being outside the scope of direct examination, and thereby repressed evidence gathered in its investigation which tended to exculpate defendant." We think it sufficient to note that no evidence exculpating the Appellant was "repressed." It is not the duty of a prosecutor to present the case of the defense. The adversary process requires that this be done by defense counsel, and we have been presented with nothing which indicates that this was not capably done.

## VII.

It is finally contended that a defense motion for new trial based upon newly discovered evidence was erroneously denied by the trial court. This motion was supported by an affidavit which stated, essentially, that the affiant was in the lobby of an apartment building in Van Wert, Ohio, between 12:00 p.m. on April 12, 1974, and 12:30 a.m., on April 13, 1974, when he saw Timothy Heckert enter the building. According to the affidavit, Heckert appeared to have been drinking, was glassy-eyed, nervous and excited. Several minutes later, the affiant saw Heckert drive by in his automobile and wave. When Heckert drove by again, the affiant observed a passenger in the car, though he could not describe that passenger.

Heckert testified at trial that he went to bed at 10:10 p.m. (Indiana time) on April 12. Apparently, no one saw him arrive at his apartment on that evening and his wife did not

waken. The Appellant thus contends that this newly-discovered evidence justified a new trial. We cannot agree.

"In order to warrant a new trial newly discovered evidence (even if we should consider this as such) must be more than mere impeaching evidence; it must be noncumulative; it must be credible and competent and it must have the probability of producing a different result at a new trial. *Emerson* v. *State*, (1972) 259 Ind. 399, 287 N.E.2d 867; *Cansler* v. *State*, (1972) 258 Ind. 450, 281 N.E.2d 881; *Wilhoite* v. *State*, (1971) 255 Ind. 599, 266 N.E.2d 23." *Jones* v. *State*, (1974) 262 Ind. 159 at 161, 312 N.E.2d 856 at 857.

It cannot be said that the evidence presented in the Appellant's motion for new trial was more than impeaching, nor can it be said that it would probably produce a different result at a new trial. The trial court did not err in denying that motion.

The judgment of the trial court is affirmed. All justices concur.

NOTE.—Reported at 362 N.E.2d 137.