Ernest TOPE, Appellant,

v.

STATE of Indiana, Appellee.

No. 684S256.

Supreme Court of Indiana.

May 17, 1985.

Rehearing Denied July 29, 1985.

Susan K. Carpenter, Public Defender, Bev Cummings, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael B. Murphy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Murder in the First Degree. The court sentenced appellant to life in prison. This conviction was affirmed by this Court in *Tope v. State* (1977) 266 Ind. 239, 362 N.E.2d 137. Appellant appeals from the trial court's denial of his petition for post-conviction relief.

Appellant raises three issues. Two of the issues could have been raised in the direct appeal of the conviction. He now argues the prosecutor improperly cross-examined the appellant concerning his post-arrest silence following the giving of *Miranda* warnings. Secondly, he contends the jury was improperly instructed as to the issue of whether the jury could infer the requisite intent from the acts which were committed.

In a petition for post-conviction relief the appellant may not raise an issue which was or could have been raised in the original trial. *Cummings v. State* (1982), Ind., 434 N.E.2d 90. Post-conviction relief is a process for raising issues unknown at trial or not available at trial. *Ross v. State* (1983), Ind., 456 N.E.2d 420.

Appellant attempts to distinguish this case from the general rule by alleging these errors are fundamental. He contends that under *Snider v. State* (1984), Ind., 468 N.E.2d 1037 a post-conviction relief petitioner may bring a freestanding complaint of fundamental error.

This Court explicitly modified the language of *Snider* in *Bailey v. State* (1985), Ind., 472 N.E.2d 1260 (DeBruler, J., concurring in result).

Two of the issues in *Bailey* were raised as fundamental error. This Court found that the two errors were ones not available at the time of the direct appeal

and treated the issues on their merits. In the case at bar we find two errors alleged to be fundamental. Under the *Bailey* rationale, it is necessary that these issues either be framed within the context of the post-conviction relief rules or be issues not known at the time of the original trial. The issues here were not brought within the rules nor are they issues not available at the time of the direct appeal. Thus they are not available in a post-conviction hearing.

Appellant does bring his last issue within the provisions of the post-conviction relief rules. He contends there now exists new evidence of material fact which requires the vacation of the conviction and sentence. *See* Ind.R.P.C. 1, § 1(a)(4).

At the post-conviction relief hearing, appellant introduced the affidavit of Thomas Sefton, the county coroner. The affidavit indicated Sefton, in his official capacity, examined the body shortly after its discovery. He noted the body still retained heat in some areas which had not been exposed to the outside air. He also observed that the body and the area around the body did not display as much blood as would be anticipated from wounds of this nature. Based upon these observations, he concluded that the victim had died between midnight and 4:00 A.M. He also concluded the victim had been wounded at a location different from where the body was found. This information would have supported appellant's alibi and contradicted a portion of the State's case.

The Sefton affidavit also indicated that he had communicated this information to the Indiana State Police. It is unclear from the record when this information was communicated and the exact nature of the communication.

Sefton's role in the pretrial activities was limited to his name appearing on the indictment. He did not perform the autopsy and he did not testify at trial. Dr. Pan performed the autopsy and did testify at trial. As to the time of death, Dr. Pan concluded the time between the death and the autopsy precluded the determination of the time of death by use of the customary devices. Dr. Pan relied upon an analysis of the degree to which the contents of the stomach had been digested to determine the length of time between death and the time of the consumption of the last meal. Pan concluded this time was approximately four hours.

Based upon the testimony of family members as to when the last meal was served, this would have placed the time of death somewhere between 9:00 P.M. and 10:00 P.M. Thus there exists a difference between the time of death suggested by the Sefton affidavit and the trial testimony of Pan. This difference is the essence of appellant's newly discovered evidence claim.

During the pretrial proceedings appellant filed a motion to produce requesting, among other things, the names and statements of all witnesses who possessed exculpatory information. The State complied with the request. However, it did not produce the name of Sefton or the contents of any statement he may have given the police. As noted earlier, it is unclear whether Sefton had in fact given the police any statement at the time the motion was filed. What is clear is that Sefton's name was on the indictment and that appellant had available various discovery tools to determine whether Sefton had knowledge of value to appellant's cause.

After the post-conviction relief hearing, the trial court filed its findings of fact and conclusions of law. The court concluded the Sefton affidavit was not newly discovered evidence which warranted a new trial. The court found appellant had been informed of Sefton's name by its appearance on the indictment. Thus his testimony would have been available at trial if due diligence had been used by appellant. The court found the testimony of Sefton would have been impeaching testimony that did not have the probability of producing a different result at a new trial.

■ In reviewing post-conviction findings of fact, this Court will examine the

evidence to see whether it "leads unerringly and unmistakably to a decision in [petitioner's] favor; that is, one opposite to that reached by the trial court." *Stuck v. State* (1981), Ind., 421 N.E.2d 622, 624 citing *Sotelo v. State* (1980), 273 Ind. 694, 408 N.E.2d 1215.

■ This Court has recognized a nine-part test to determine when a new trial should be granted based upon newly discovered evidence. *See Vacendak v. State* (1976), 264 Ind. 101, 340 N.E.2d 352. Three of the requirements of the *Vacendak* test are: 1) the new evidence not be merely impeaching, 2) due diligence was used to discover the evidence in time for trial, and 3) the evidence will probably produce a different result at the new trial. Applying this standard of review, we find no error.

■ We agree with the trial court's conclusion that appellant could have discovered the nature of Sefton's knowledge prior to trial. The filing of the motion to produce was an important step in the discovery process, but it was not the only tool available to appellant. Sefton's name was among a list of twenty names on the back of the indictment. Appellant was free to contact Sefton or any of the others to ascertain their knowledge of the events.

■ We also agree with the trial court's second conclusion. Sefton was the elected coroner and a local undertaker. As a lay witness he was competent to testify as to his sensory perceptions. He could testify as to the warmth he felt in the body and to the amount of blood loss he observed at the scene. However, if he had been available at trial, he would not have qualified as an expert witness on the question of the time of death. His testimony would have been no more than contradicting testimony of that provided by the pathologist. Contrary to appellant's argument, we do not believe this testimony would have resulted in a different outcome at a new trial.

The trial court is in all things affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Recently in *Snider v. State* (1984), Ind., 468 N.E.2d 1037, this court dealt with a claim which had not been made at trial or in a first and direct appeal, and held that it could be raised in a collateral attack in a first post-conviction petition through (1) a showing of ineffective assistance of counsel, (2) fundamental error, or (3) a justification of the prior default in not raising it. The subsequent *Bailey v. State* (1985), Ind., 472 N.E.2d 1260, regulates the manner of raising issues through the second category, but leaves the other two categories unaffected. In raising the alleged violation of due process through cross-examination of the defendant by the prosecutor on the subject of his post *Miranda* advisement silence, the public defender utilizes two of the categories, fundamental error and justification.

Appellant first raised the claim in his post-conviction petition that the prosecution had used his post-*Miranda* advisement silence during cross-examination of him for impeachment in violation of due process. The trial court concluded that on the merits the claim could not be sustained *and* that the claim had been waived by failure to raise it upon direct appeal.

At appellant's trial the prosecutor repeatedly questioned Tope, during cross-examination, about his failure to explain his story to the police or prosecutor. That period of silence was preceeded by *Miranda* warnings. The defense attorney objected but was overruled, the court ruling that the questioning was within the scope of cross-examination. This questioning was like that considered by this court in *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402, wherein relying upon the holding in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, we reversed because of the resulting violation of due process guaranteed by the Fourteenth

Amendment. Based upon *Jones* and *Doyle*, I find that appellant's post-conviction claim based upon *Doyle* that a violation of his due process rights occurred at his trial, is clearly sustained, and should result in the grant of a new trial, unless the violation is harmless beyond a reasonable doubt, or was previously waived as found by the trial court.

Appellant's motion to correct errors addressed to his initial trial and conviction was filed on September 12, 1975. It contained no reference to any error in permitting the use of post-advisement silence during cross-examination. *Doyle* was decided the following year on June 17, 1976. Appellant's brief was filed on June 18, 1976. It contained no reference to the improper use of post-advisement silence. Doyle has been treated as fully retroactive. *Williams v. Zahradnick* (4th Cir.1980), 632 F.2d 353, and cases cited therein. *Doyle* declared for the first time that the federal proscription against the use of post-advisement silence was applicable to the states. *Doyle,* in relation to the courts of this state, constitutes a significant change in the law, occurring for our purposes here on June 17, 1976, and is fully retroactive. This change justifies appellant's failure to raise this issue in his motion to correct errors and in his brief on appeal, and demonstrates the error of the post-conviction court's judgment that the *Doyle* issue was waived on direct appeal.

I would therefore reverse and remand to the post-conviction court for further proceedings not inconsistent with this opinion, and to address the question of harmless constitutional error.