**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**C. BRENT MARTIN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN R. SANTANA, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1406-PC-186 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
The Honorable Kathleen A. Sullivan, Magistrate
Cause No. 45G02-1209-PC-12

**December 17, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Steve Santana (Santana), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Santana raises two issue on appeal which we restate as:

(1) Whether the State's failure to disclose an alleged plea agreement with the State's key witness constituted prosecutorial misconduct; and

(2) Whether Santana was denied effective assistance of trial counsel.

## FACTS AND PROCEDURAL HISTORY

We adopt the recitation of facts as set forth in Santana's direct appeal, *Santana v. State*, No. 45A05-0710-CR-564,*1 (Ind. Ct. App. Jun. 13, 2008), *trans. denied*:

At approximately 3:00 p.m. on Saturday, July 1, 2006, Luis Ortiz met his friend, Rudolph Swisher, while both were riding bicycles in their East Chicago neighborhood. Ortiz was a member of the Latin Kings gang. Both Ortiz and Swisher were wearing red shirts and had similar hair. While riding, they saw Santana. Ortiz knew Santana was a member of a rival gang, the Imperial Gangsters. As Santana reached under his shirt, he motioned for Ortiz and Swisher to approach him. They rode away from Santana in different directions.

Later that evening, Victor Madero came to Ortiz's home. Madero was a member of the Latin Kings. Ortiz told Madero of the earlier encounter with Santana. They went to Madero's house. While they were sitting on Madero's porch, Swisher and his girlfriend rode by on a bicycle. They talked and agreed to meet at Ortiz's house after Swisher dropped off his girlfriend. Ortiz and Madero returned to Ortiz's house.

At approximately 8:00 p.m. Juan Guardiola stopped by Ortiz's house but did not stay. Guardiola was associated with the Latin Kings but was not a member. Shortly thereafter, Madero pointed out a person dressed in black pants, a black hoodie, and black shoes lurking in the shadows of a nearby alley. Ortiz

2

recognized the person as Santana.[1]  At that same time, Ortiz and Madero noticed Swisher riding his bicycle toward Ortiz's house.  Santana came out of the alley and approached Swisher from behind.  Santana shot Swisher several times from close range.  Swisher fell from his bicycle, and Santana fled.  Ortiz ran out to Swisher in the street even as Santana fired additional shots at the house.  Swisher had been shot four times in the back and died from his wounds.

Ortiz and Madero were questioned by the police but denied seeing anything. Three days later, they were arrested for pointing a gun at Santana's mother and stepfather.  Ortiz told the police Santana killed Swisher.  The police arrested Santana and seized black clothing and other items from his home.  A pair of Santana's black pants tested positive for blood, but the amount was insufficient to permit a DNA test.

On July 7, 2006, the State charged Santana with murder.  A jury trial commenced on July 23, 2007.  The State tendered a final jury instruction on transferred intent, and the court gave a pattern instruction on transferred intent over Santana's objection.  The jury returned a guilty verdict.

Ten days after Santana's trial, the State entered into a plea agreement with Ortiz for the charges related to pointing a gun at Santana's mother and stepfather.  Two days before his sentencing hearing, Santana moved to correct error claiming Ortiz and the prosecution misrepresented whether Ortiz was testifying in return for leniency.  The motion to correct error was denied.  At sentencing, the court found three aggravating circumstances: 1) Santana had recently violated probation in two other cases; 2) Santana had a criminal history; and 3) because of prior probation failures, Santana was in need of correctional and rehabilitative treatment in a penal facility.  The court found no mitigating circumstances.  Santana was sentenced to sixty-two years imprisonment.

On direct appeal, Santana argued that (1) the State failed to disclose that Ortiz might have received a plea deal by testifying against him; (2) the trial court erred in instructing the jury on transferred intent; and (3) his sentence was inappropriate in light of his character and offense.  On June 13, 2008, we affirmed Santana's conviction.  *See*

---

[1] While walking home from Ortiz's house, Guardiola ran into Santana and an unidentified man.  Guardiola testified Santana was dressed in all black and wearing a hoodie.  Guardiola became alarmed and ran home.  Five or ten minutes later, he called Ortiz and learned Swisher was dead.

*id.* On September 20, 2012, Santana filed his *pro se* petition for post-conviction relief. Subsequently, on March 12, 2013, Santana filed for leave to amend his petition for post-conviction relief. In his amended petition, Santana raised two issues: First, Santana claimed that he was denied effective assistance because his trial counsel failed to attach Ortiz's pre-trial transcript of June 28, 2007, to his motion to correct error, and in essence, it would have revealed that Ortiz's "case was set down for a change of plea hearing prior to his testimony" and that it was reasonable to assume that Ortiz hoped to receive favorable treatment from the State on his impending charges. (Appellant's Br. p. 7). Secondly, Santana argued that the State violated the standard of fairness mandated by *Giglio v. United States*, 405 U.S. 150,154 (1972) (holding that a defendant is entitled to a new trial if he can establish that the prosecutor intentionally or inadvertently failed to correct materially false testimony relevant to the credibility of a key State witness). A two-day evidentiary hearing was held on July 2, and July 30, 2013. On May 9, 2014, the post-conviction court issued its Order denying Santana's petition for post-conviction relief.

Santana now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

It is well established that post-conviction proceedings do not afford the petitioner with a super appeal but, rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. The proceedings do not substitute

for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was available on direct appeal but not litigated, it is waived. *Id.* A petitioner must establish his claims to post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5.

Appeal from a denial of post-conviction relief is equivalent to an appeal from a negative judgment. *Turner*, 974 N.E.2d at 581. We will therefore not reverse unless the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* Where the post-conviction court has entered findings of fact and conclusions of law, we accept the findings of fact unless clearly erroneous, but accord no deference for conclusions of law. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.* at 581-82. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## A. *Failure to Disclose Information*

Santana maintains that credibility of Ortiz as the key witness was essential to the State's case. As such, he argues that when Ortiz testified that he had not received any set promises for his testimony, Ortiz "gave the jury a false impression that there were no negotiations and he was merely testifying out of his sense of civic duty . . ." (Appellant's Br. p. 11). He argues that the State had an affirmative duty to correct Ortiz's misleading testimony; instead, it "repeatedly [] boost[ed] Ortiz's credibility" throughout his entire trial. (Appellant's Br. p. 12). Based on the foregoing arguments, Santana maintains that

5

the prosecutor's failure to disclose the existence of Ortiz's plea agreement established a due process violation according to the holding in *Giglio*. Contrary to Santana's assertion, the State argues that Santana's issue of prosecutorial misconduct, which Santana reframes as a *Giglio* violation—which stands for the proposition that the prosecution may not stand mute while testimony known to be false is received into evidence—was litigated on appeal and is barred by the doctrine of *res judicata*.

We first note that Santana's issue of prosecutorial misconduct, now redesigned and bundled up as a due process claim, was readily available at the time of his direct appeal. Post-conviction relief is a process for raising issues unknown at trial or not available at trial. *Tope v. State*, 477 N.E.2d 873, 874 (Ind. Ct. App. 1985), *reh'g denied*. It is well established that a petition for post-conviction relief cannot include an issue which was or could have been raised in the original trial. *Id.* Accordingly, to the extent Santana now raises an issue that was available on direct appeal, he has waived his claim for appellate review. *See id.*

Moreover, even if this exact issue was raised on Santana's direct appeal, Santana is foreclosed by the doctrine of *res judicata* from advancing his prosecutorial misconduct claim. It is well established that a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). On direct appeal, we concluded that

> Ortiz entered into a plea agreement with the State ten days after Santana's trial concluded, but Santana has not shown there was a confirmed promise at the time of trial. Even if Ortiz's plea agreement was the result of his

6

testimony at Santana's trial, Santana has not demonstrated the State made promises to Ortiz before he testified. As such, Santana is unable to demonstrate prosecutorial misconduct or fundamental error.

*Santana*, No. 45A05-0710-CR-564, slip op. at 2. Because this court determined that there was no confirmed promise between Ortiz and the State, there was no prosecutorial misconduct with respect to the State's failure to disclose any understanding it had with Ortiz. Santana should not get another bite at the apple by reframing the issue of prosecutorial misconduct. In conclusion, we find that the post-conviction court did not err when it denied his claim.

## II. *Ineffective Assistance*

Lastly, Santana urges us to find that his trial counsel was ineffective for failing to investigate. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984), *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Id.* Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake, v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697), *reh'g denied, cert. denied*, 537 U.S. 839 (2002).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Id*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

Further, a claim of ineffective assistance of counsel based on a failure to investigate requires a showing of what additional information may have been garnered from further consultation or investigation, and how that additional information would have aided in the preparation of the case. *Turner*, 974 N.E.2d at 585. Here, Santana argues that had his trial counsel conducted "minimal investigation" in obtaining a copy of Ortiz's pretrial transcript, his motion to correct error would have prevailed. (Appellant's Br. p. 13). He further states that while "no specific agreement was memorialized, the evidence leads to the logical and reasonable conclusion that the State was promising to offer [] Ortiz leniency in his pending cases upon completing his cooperation in Santana's case." (Appellant's Br. p. 16). Again, we disagree.

8

Our review of the record reveals that trial counsel's performance did not fall below the objective standard of reasonableness. During Santana's evidentiary hearing, his trial counsel testified that he was unaware of the looming plea deal between Ortiz and the State. He further stated that when he learned of it, he immediately filed a motion to correct error, to which he attached two affidavits sworn by Santana's parents stating that the prosecutor had informed them that Ortiz's plea agreement was issued in exchange for Ortiz's testimony against their son, as well as a copy of Ortiz's plea agreement.

We fail to see how a copy of Ortiz's pre-trial transcript indicating a rescheduling of Ortiz's pre-trial to a later date after Santana's trial, would have yielded a positive result to Santana's motion to correct error. As stated before, this court determined there was no confirmed plea deal between the State and Ortiz; therefore, any inaction from trial counsel in obtaining a copy of the pre-trial transcript was not vital to Santana's murder trial. In this regard, we find that Santana's trial attorney representation was well within the bounds of professional norms and was therefore effective. More importantly, even with the presentation of Ortiz's pre-trial transcript at his evidentiary hearing, Santana was unable to prove that an agreement had been reached.

Additionally, Ortiz's counsel testified that the fictitious plea deal that Santana believes that State struck with Ortiz had zero effect on his murder trial. During Santana's evidentiary hearing, Ortiz's counsel testified that at the time of Santana's trial, he was representing Ortiz in two separate cases. In the first case, Ortiz had been charged with attempted battery, two counts of criminal recklessness, carrying a handgun without a license, and two counts of criminal mischief. The second case related to Ortiz pointing

9

a gun at Santana's parents, carrying a handgun without a license, and possession of marijuana. Ortiz's counsel testified that there had been no discussion with the State as to whether consideration would be given in exchange for Ortiz's testimony against Santana. Rather, he credited the plea negotiations on the fact that State's cases against Ortiz were shaky. In the battery case, Ortiz's counsel believed that the victim was not necessarily dead set on cooperating with the prosecution. As for Ortiz's second case where Ortiz had pointed a firearm at Santana's parents, Ortiz's counsel had been in communication with the prosecution, and had the impression that the State was unwilling to prosecute the case. He further testified that since it was not Ortiz's wish to go to trial, he vacated Ortiz's pre-trial date for a later one all in the hopes of biding time and allowing the State to sweeten Ortiz's plea deal.

In sum, Santana fails to overcome the presumption that his trial counsel's performance was effective. Thus, he failed to satisfy his burden of showing that his trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable possibility that the result of the proceeding would have been different if his counsel had not made the alleged error.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court properly denied Santana's petition for post-conviction relief.

Affirmed.

VAIDIK, C. J. and BAKER, J. concur

10