ROOSEVELT WILLIAMS *v.* STATE OF INDIANA.

[No. 677S418.  Filed May 11, 1978.]

*James R. Bielefeld,* of Crown Point, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

GIVAN, C.J.—The appellant was convicted of murder while in the perpetration of a robbery and sentenced to life imprisonment. The record shows that the appellant, Larry Bullock and Darryl James were charged by way of indictment with murder while in the perpetration of a robbery. Bullock was acquitted for insufficient evidence and James became a witness for the State. Appellant's initial conviction was reversed by this Court on the ground that the State had used an illegal confession in prosecuting the appellant. That case is reported in 348 N.E.2d 623. On retrial the appellant was again convicted, primarily on the testimony of Darryl James.

James testified that the appellant had recruited him to participate in the robbery and that the victim had been shot by Larry Bullock. On direct examination the State asked James if he had taken a polygraph examination prior to making a statement to the police in regard to the appellant's involvement in the crime. An objection was immediately raised by appellant and sustained by the trial court. Outside the presence of the jury, the appellant moved for a mistrial on the grounds of prosecutorial misconduct and prejudice resulting from reference to the examination. Appellant alternatively moved that the trial court admonish the jury to disregard the question. The court refused to grant a mistrial or to admonish the jury to disregard the question. It is this action which appellant raises as error on appeal. We hold the trial court erred in refusing to grant a mistrial. Therefore, we will not analyze the merits of other issues raised by appellant.

The grant of a mistrial is largely discretionary with the trial court and will not be disturbed on appeal unless the appellant can affirmatively demonstrate that his rights were substantially prejudiced so as to deny him a fair trial. *Cooper* v. *State*, (1977) 265 Ind. 700, 359 N.E.2d 532; *Whitten* v. *State*, (1975) 263 Ind. 407, 333 N.E.2d 86. James was the State's primary witness linking appellant to the crime. Therefore, the jury's determination of his credibility was essential to the State's successful prosecution. It is within this context that the effect of the State's reference to the polygraph examination must be analyzed. Absent a waiver or stipulation, the results of a polygraph examination are inadmissible in a criminal prosecution. *Tope* v. *State*, (1977) 266 Ind. 239, 362 N.E.2d 137. This rule is based on the proposition that polygraph examinations have not been proven to be sufficiently accurate to mandate their admission at trial and that the jury will give undue weight to the validity of such examinations. *Vacendak* v. *State*, (1976) 264 Ind. 101, 340 N.E.2d 352. Even though the prosecutor stated that he knew such evidence was inadmis-

sible, he still asked James if he had taken the examination. His purpose in asking the question was to reinforce the credibility of James' testimony by demonstrating that he had taken the examination and was therefore testifying truthfully at trial. This conclusion is supported by dialogue between the prosecutor and the court at the time of the motion for mistrial:

"BY THE COURT:

"What was the prosecution's purpose in asking that question?

"BY MR. VANES:

"Testimony would have elicited the fact that prior to his written statement he took a lie detector test. Now, the State offered that for the purpose of showing that this witness testified truthfully in his statement.

"We were not after the results of the lie detector test and whether his verbal statement to the officers was true or untrue. We were simply offering that to show the existence of a test, to show that in conjunction with the test before this statement and the statement itself, it could be argued that this witness in fear having taken a test, gave a truthful statement because there was implication that he made this story up in order to get a promise of no charge from Mr. Heighsmith.

"I think that was the jist of Mr. Carmouche's cross examination and I was attempting simply to show that at this time this witness testified truthfully. That he gave a true and accurate statement."

The State contends that no error was committed in asking James if he had taken the examination because only the admission of results are prohibited, not the mere fact that the examination was given. The State's position is entirely inconsistent with the reasons for the exclusion of polygraph tests. When, as in the case at bar, the State seeks to establish that a witness has taken a polygraph examination in relation to testimony given at trial, there is a high probability that the jury will conclude that the witness is telling the truth and that the accused merely seeks to suppress that truth. This result, which the State was admittedly seeking in this case,

is extremely prejudicial to the accused, especially as in the case at bar when the testimony is essential to link the accused to the crime charged.

The State further argues that if error did exist it was harmless because the polygraph results were not admitted and because the witness was not permitted to answer the question. These considerations, however, do little to mitigate the prejudice to the appellant's rights. Once the jury realized that the witness had taken the examination it was likely to conclude that he was telling the truth. The witness' failure to answer the question in either the affirmative or the negative would not change this result.

We therefore hold the trial court erred in refusing to grant a mistrial. This case is reversed and remanded for a new trial.

DeBruler, Hunter, Pivarnik and Prentice, JJ., concur.

NOTE.—Reported at 375 N.E.2d 226.