Phillip P. PAVONE, Appellant,

v.

STATE of Indiana, Appellee.

No. 279S46.

Supreme Court of Indiana.

April 15, 1980.

Rehearing Denied June 27, 1980.

Jerrald A. Crowell, Bowman & Crowell, Fort Wayne, Mark A. McIntosh, Huntington, for appellant.

Theo. L. Sendak, Atty. Gen., Michael G. Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Phillip Pavone was found guilty of first degree (felony) murder by a jury on May 3, 1978. He appeals, presenting five issues for our review. These issues are claims of error based on (1) the trial court's allowing the State to amend the charging information; (2) a prohibition against the introduction of evidence of polygraph examinations; (3) the denial of a motion in limine; (4) comments by the prosecuting attorney; and (5) the sufficiency of the evidence.

On November 5, 1974, Jacob Shaw found the bodies of his father, Glen Shaw; his sister, Wilma Gruver; and his nephew, John Gruver. They had been shot and killed in the home where Jacob lived with his father. Jacob Shaw went to his brother's home which was approximately one-half mile away. His brother, Lewis, drove with him back to his home while Lewis' wife called the sheriff's department. Investigation by the sheriff's office and the Indiana State Police followed. Subsequently, Tim Aker made oral and written statements to police. In brief, he stated that he and Phillip Pavone had been shooting pool and discussing ways to get some money. Aker had taken a gun from his father's gun cabinet. They left in Pavone's car and picked up bullets from Pavone's brother-in-law's house, then drove around looking for a place to rob, and decided to go to the Shaw residence because it was in a secluded area. When an old man and a boy answered the door, Pavone and Aker pretended to have car trouble and asked to use the phone. Aker "faked" a phone call and they left. The old man followed them out and gave them some gas which they put into Pavone's car. They went back to the house and Pavone pulled the gun. They forced their way into the house. Pavone shot the boy, the woman and the old man several times. He reloaded the gun and fired more shots after hearing moaning sounds. He then handed the gun to Aker telling him to make sure they were dead. Aker testified that he fired one shot at the body of the woman and one at the body of the boy and that the gun then clicked and was empty. Aker picked up cartridges and took the man's wallet, while Pavone took money from the woman's purse. They left in Pavone's car and Aker threw out the empty cartridges and the billfold. They returned to Aker's home in Craigville, divided the money, returned the gun to the cabinet and Pavone went to his home.

I.

Appellant Pavone claims that the trial court erred in permitting the State to amend the information charging him. The original information filed on August 4,

1976, charged Pavone with the death of Glen Shaw in the perpetration of a robbery in the following pertinent language:

"[P]hillip P. Pavone did unlawfully, feloniously, purposely kill and murder one Glen Shaw while perpetrating or attempting to perpetrate a robbery. . ."

The cause was then venued to Allen County. On May 9, 1977, the State filed an amended information alleging that Pavone unlawfully and feloniously killed and murdered Glen Shaw by shooting him during the perpetration of a robbery and contained additional details about the robbery.

Appellant claims that because the amended information no longer used the word purposely this change is one of substance and that his objection to this amendment and his motion to strike filed May 12, 1977, were improperly overruled. He argues that he could no longer show he did not purposely shoot anyone and that the State no longer had to prove he did. Trial was not had until October 4, 1977, which resulted in a mistrial. A second trial was had and the verdict against Pavone resulted on May 3, 1978.

■ Ind.Code § 35–3.1–1–5 (Burns Supp. 1978) allows the amendment of an indictment or information by the prosecutor at any time as long as the defendant is accorded an adequate opportunity to prepare his defense commensurate with such changes. *Highsaw v. State*, (1978) Ind., 381 N.E.2d 470. Here it is clear that both informations stated that the offense involved was murder in the perpetration of a robbery and contained reference to the applicable statute. In addition, appellant had adequate opportunity to prepare his defense. There is no error here.

## II.

■ Appellant next claims that the trial court erred when it sustained that portion of the State's motion *in limine* which prohibited any mention of polygraph examinations of Timothy Aker, the State's chief witness. It is well settled that absent a waiver or stipulation by the parties, refer-

ences by witnesses or counsel to the results or administration of polygraph examinations are inadmissible in a criminal prosecution, and motions *in limine* are proper in respect to such references. *Moore v. State*, (1977) Ind., 369 N.E.2d 628; *Tope v. State*, (1977) Ind., 362 N.E.2d 137.

The more common situation involves polygraph examination or test results of a defendant. Here, a witness, rather than the defendant was the subject of the examination. Appellant claims a waiver form permitting disclosure of the results of the examinations taken by Timothy Aker to "interested persons, complainants and investigating officers" signed by Aker, was sufficient to require admission of the evidence of polygraph examinations and results. The appellant, Pavone, and the State did not participate in any stipulation or procedure regarding Aker's examination and the admission of results of examinations at Pavone's trial.

In *Williams v. State*, (1978) Ind., 375 N.E.2d 226, this Court reversed and remanded for a new trial in a cause involving a prosecutor's questioning of a witness regarding his taking a polygraph examination. In *Williams* it was clear that the prosecutor was attempting to reinforce the credibility of a witness by demonstrating that the witness had taken a "lie detector" test and that he had testified truthfully. In the present case, the appellant wished to have the polygraph evidence admitted in order to attack the credibility of the witness. It appears that the same problems are present in the admission of such evidence whether the purpose of the admission is to reinforce or to attack the credibility of a witness. These problems basically involve the unreliability of polygraph examinations and the danger that juries will give undue weight to their results.

The problems involving polygraph examinations were discussed and certain prerequisites for written stipulations providing for defendant's submission to the tests and for subsequent admission at trial of the resulting graphs and examiners opinions were set

out in *Owens v. State*, Ind.App., 373 N.E.2d 913. It appears that these standards are supported by our case law in that if they are complied with a court may admit evidence of the defendant's submission to a polygraph examination and the results of it without abusing its discretion.

In *White v. State*, (1978) Ind., 381 N.E.2d 481 waivers were discussed. In that case a defendant waived her right to object to the admission of the results of a polygraph test. She had stipulated prior to the taking of the examination that the results could be used as evidence at her trial. Her counsel and the court carefully questioned her at a waiver hearing as to her understanding of the waiver and her right to object to the admission of the evidence. It was held that the court did not abuse its discretion to admit or to refuse to admit the results of a polygraph examination after a waiver of the right to object had been obtained.

Here there is no showing that the parties, Pavone and the State, entered into a stipulation regarding the examination of Aker and the admission of the results of that examination. There is no showing that the prosecutor signed a waiver for the use of Aker's polygraph results. Since no written enforceable stipulation was made between the parties, the evidence of polygraph tests and results was inadmissible. *Owens, supra.* Had there been such a stipulation it remains within the discretion of the trial court to admit or to refuse to admit such results. *White, supra.*

■ The kind of waiver Aker did sign appears to relate to Aker's waiver of his right against self-incrimination in general and cannot be read as a valid waiver of his right to object to the introduction of polygraph test results by Pavone. *See Slagle v. State*, Ind.App., 393 N.E.2d 798. Here there was no stipulation or waiver to these examinations or results being admitted. Therefore, there is no error in the granting of the motion *in limine* refusing to admit evidence of polygraph examinations of witness Aker.

## III.

Appellant's next allegation of error concerns the denial of part of his motion *in limine* and his offer to prove. Appellant's claim relates to the influence of hypnosis on the testimony of State's witness Tim Aker. The motion *in limine* sought to prevent the State from introducing or making any mention of:

"1. Any testimony of Timothy Aker because of the general unreliability and untrustworthiness of all the witness' remembrances which have been tainted by hypnosis.

2. In the alternative, the introduction of any testimony by Timothy Aker which the said Timothy Aker did not remember prior to hypnosis.

3. Any statements made by Timothy Aker or any tape recordings or any transcripts thereof taken or made of said Timothy Aker while under hypnosis or any testimony concerning such statements or any evidence that such a hypnotic test or trance was induced."

Paragraphs one and two were denied; paragraph three was granted. In his offer to prove appellant merely stated that he could present evidence that Timothy Aker had been hypnotized, and that it was impossible to tell how much of his testimony was his own recollection and how much of it was a result of suggestions made to him. This offer to prove was denied.

■ The record shows that the appellant made no objection to the admission into evidence of testimony or the prior written statements of Aker on the grounds set out in the motion *in limine* at the time the evidence was offered at trial. An objection is required at this critical point in the trial. *State v. Church of Nazarene of Logansport*, (1978) Ind., 377 N.E.2d 607. Thus any error has been waived.

■ In addition, in both the motion *in limine* and in the offer to prove appellant did not establish how Aker's testimony was influenced by hypnosis, but simply speculates that the testimony was tainted. It appears from the record that through the court's discovery order all statements in-

cluding videotaped statements of Aker's hypnosis were available to appellant and could have been used to demonstrate any evidence of any taint or prejudice to the appellant. This was not done. Rather, it appears that appellant complains because he was required to determine whether it was best to avoid any mention of hypnosis at all or to place the issue of hypnosis before the jury. The offer to prove did not present any statement of facts that would be used to demonstrate any "taint" by hypnosis. Therefore, the offer to prove did not demonstrate the relevancy or materiality of the proffered evidence, and the trial court did not abuse its discretion in denying it. *Tope v. State*, (1977) 266 Ind. 293, 362 N.E.2d 137, 142.

### IV.

Appellant's fourth claim of error is his contention that the State commented on the defendant's failure to testify and that the trial court erred when it refused to grant his motion for mistrial based on this ground.

Appellant complains of four comments which occurred at different times during closing argument. They are:

"There's no question at all that Aker was there and is telling the truth, but the question I would pose to you now is why does Aker all at once start to lie by including Pavone? And if—and in fact, does he? Does he as a matter of fact lie when he includes Pavone? And the second question posed to you, is he the chief witness in this trial? Now he is the longest witness in the trial."

"Now I don't like that, but as I made clear I hope to you, the horror of this case is I don't have Glen Shaw or John Gruver or Wilma Gruver to testify, and these lawyers make it very plain to me they want somebody on the witness stand to open their mouth and say something, so if we're talking about immunity, here it is and so be it."

"What we have tried to do in this case is present to you all of the facts that we knew. Every possible fact that we knew.

I'm not going to go over those facts with you. You've heard them enough. I'm going to say about the defense argument. There are three ways to defend a case, and when you've got the facts, you defend it on the facts, and when the law is—when the facts are against you, you defend on the law and when both the facts and the law are against you, you try the Prosecutor and the detectives, and that's what's going on."

"The problem here is the fact that I am attacked and Carl Dolby is attacked by Mr. McIntosh's final arguments. You saw him. It tells me something. It tells me they are working with nothing, and I want you to understand that that is a legitimate interpretation of those words."

There was no objection to the comments at the time each was made. After the third comment a discussion at the bench followed. In appellant's motion for mistrial, made after the prosecutor had completed his final argument and the court had recessed, defendant raised an objection as follows:

"MR. McINTOSH: Your Honor, at this time the defense would move for a mistrial on the basis that the State of Indiana in their closing argument commented on the fact that the defendant did not take the stand in his own defense. I specifically believe that his statement, "that a legitimate interpretation of the defense of this case is the defense is working with nothing" is a direct innuendo and a direct commentary on the fact that the defendant did not take the stand. There are other statements that I felt were commentary, and I think the record will show it, and on that basis, I, would move for a mistrial at this time."

Appellant's failure to raise a specific objection at the time the alleged improper comments were made results in a waiver of the issue as error for review. *Womack v. State*, (1978) Ind., 382 N.E.2d 939, 940; *Maldonado v. State*, (1976) 265 Ind. 492, 497–98, 355 N.E.2d 843, 848. In addition, these remarks can be generally described as comment on State's witness Aker, and his credibility. They are also responsive remarks concern-

ing immunity granted to Aker and the role of the prosecutor and detectives regarding that grant of immunity. These are not comments concerning the defendant's failure to testify.

■ The last comment as set out specifically in the motion for mistrial to the effect that "the defense is working with nothing" is characterized by the appellant as a direct innuendo and comment that the defendant did not take the stand. We disagree. The appellant presented witnesses on his behalf and the comment appears to have been made in response to an attack by the defense on the prosecutor and detectives and is not a direct or an indirect reference to the appellant's failure to testify. *Fortson v. State*, (1978) Ind., 379 N.E.2d 147. There is no error here.

### V.

Appellant finally argues that the evidence was insufficient to sustain the jury's verdict. His argument is that the testimony of the State's main witness, Timothy Aker, is unworthy of belief because of the character of this witness, his failure to tell the entire story to the police when he was first confronted and because there were discrepancies in statements made by Aker.

■ In determining the sufficiency of the evidence, this Court will look only to the evidence most favorable to the State and the reasonable inferences to be drawn therefrom. We will not disturb a verdict if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Deaton v. State*, (1979) Ind., 389 N.E.2d 293, 296.

■ Appellant argues that the State's main witness, an admitted accomplice to the murders, had sold and used drugs. Appellant also points out that Aker did not tell the entire story to police immediately and that Aker's statements varied during the long investigation and prosecution. Appellant also comments on the plea bargain agreement under which Aker was to be prosecuted only for the crime of rob-

bery. It is not unusual that incriminating evidence comes from an accomplice. Our court has held that on review, it is immaterial that much of the evidence came from unsavory persons who had an interest in the proceedings and that this is a matter of credibility. *Bates v. State*, (1977) 267 Ind. 8, 366 N.E.2d 659, 662. The jury was presented with all of this evidence at trial and these issues were matters of credibility to be determined by them. It is well established that the testimony of a single eyewitness can be sufficient to sustain a conviction. *Hill v. State*, (1979) Ind., 394 N.E.2d 132, 135. Here, in addition, other evidence was presented which tended to corroborate Aker's testimony. There is sufficient evidence of probative value upon which a jury could reach a verdict of guilty beyond a reasonable doubt. There is no error on this issue.

Judgment affirmed.

All Justices concur.