Gregory **TYRA, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A02–9006–PC–351.[1]

Court of Appeals of Indiana, Fifth District.

July 9, 1991.

Steven Knecht, Lafayette, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Appellant Gregory Tyra's petition for post-conviction relief was denied following an evidentiary hearing. His convictions for arson, burglary and theft were upheld on direct appeal in *Tyra v. State* (1987), Ind., 506 N.E.2d 1100. The sole issue raised is whether Tyra received effective assistance of trial and appellate counsel. We find that he did and affirm.

### FACTS

The home of Oliver and Virginia Foxworthy caught fire in the early morning hours of New Year's Day. Upon investigation, it became apparent that the house had been ransacked prior to the fire and that the fire resulted from arson. Investigators found blood inside the house. While investigating the crime, Detective Stonebraker observed Gregory Tyra and his brother, Kenneth, walking down the street in the vicinity of the Foxworthy home. Stonebraker knew Tyra and Kenneth did not live in the neighborhood and also noticed that Kenneth had a bandage on one hand. Stonebraker stopped the two and asked for identification and an explanation for their presence in the area. They replied that they were looking for snow shoveling jobs. Stonebraker asked them to empty their pockets, but also informed them that they did not have to comply. They declined his invitation to empty their pockets.

Stonebraker then informed them that he would conduct a pat down search before continuing the conversation. At that time, Tyra told Stonebraker that he possessed a starter's pistol and slowly removed the pistol and handed it to Stonebraker. Stonebraker proceeded to search Tyra's pockets and removed a watch and a lapel pin. Kenneth voluntarily emptied his pockets at that time. Stonebraker noted the items found on the brothers and returned them. He then contacted the Foxworthys who were on vacation. They expressed their belief that the items found in the possession of the Tyras were their belongings. Based on this information, the Tyra brothers were arrested. Kenneth initially took full responsibility for the break-in but denied any knowledge of the arson. He later implicated Tyra as his accomplice but still claimed to have no personal knowledge of the arson. Kenneth and the prosecutor negotiated a plea agreement that was later rejected by the prosecutor when Kenneth failed to pass a polygraph test on the arson. Kenneth testified against Tyra at trial without a plea agreement but with use immunity. Other facts will be supplied as needed.

Tyra alleges that his trial counsel provided ineffective assistance by failure to file a motion for pre-trial discovery, failure to depose witnesses, failure to consult, failure to properly impeach Kenneth Tyra, failure to challenge the stop and search, failure to object when the judge permitted the jury to deliberate without first instructing the alternate not to participate, failure to object to irrelevant and prejudicial testimony and failure to include issues in the motion to correct error. Appellate counsel is alleged to have been ineffective for failing to raise on direct appeal the issues omitted by trial counsel.

### STANDARD OF REVIEW

When a claim of ineffective assistance of counsel is raised, we look to the following:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the

defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the convictions or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Judicial scrutiny of ineffective assistance claims should be deferential and undistorted by hindsight, with "[i]solated poor strategy, inexperience, or bad tactics" not implying ineffectiveness. *Burr v. State* (1986), Ind., 492 N.E.2d 306. To prevail, the appellant must show that counsel committed particular, unreasonable errors, resulting in prejudice, such that, but for those errors, it is reasonably probable that the proceeding would have resulted differently. *Id.* Since this is a post-conviction proceeding, the defendant bears the burden of proof by a preponderance of the evidence. We will reverse the decision of the trier of fact only where the evidence is without conflict and leads to but one conclusion and that conclusion is contrary to the one reached by the trier of fact. *Sims v. State* (1989), Ind.App., 547 N.E.2d 895, 896, *trans. denied.*

## PRE–TRIAL DISCOVERY

■ Tyra asserts that his trial counsel was ineffective because he failed to file a motion for pre-trial discovery. At the post-conviction hearing counsel testified that the prosecutor allowed him free access to the entire file compiled by the State of Indiana and therefore a motion was unnecessary. Nothing would have been gained by filing a discovery motion and consequently counsel was not ineffective for failure to formally request discovery.

## DEPOSITION OF WITNESSES

■ The second allegation of ineffectiveness is counsel's failure to depose witnesses. In response, trial counsel testified that he had access to all witness statements, including two made by Kenneth, contained in the prosecutor's file. Tyra argues that had the witnesses been deposed, counsel could have impeached them. However, he fails to point out any specific impeachable responses made at trial which could have been contradicted by deposing the witnesses and therefore has established no error.

## CONSULTATION

■ Failure to fully confer and discuss the defense with Tyra is the third allegation of pre-trial ineffectiveness. Trial counsel testified he consulted with Tyra on several occasions, both in person and via telephone. In contrast, Tyra testified he only talked with his attorney a few times. It is submitted that, had he discussed the case with counsel and been presented with the information in the State's file and depositions of all the witnesses, he would have realized the strength of the case against him and entered a plea agreement. In order to establish prejudice in this manner, Tyra must point out specific evidence of which he was unaware as a result of the lack of sufficient consultation. This he has not done. Therefore, we find no prejudice in his decision to reject the guilty plea. *Hollon v. State* (1980), 272 Ind. 439, 398 N.E.2d 1273, 1278. *Coker v. State* (1986), Ind., 499 N.E.2d 1135, 1138.

## IMPEACHMENT OF KENNETH TYRA

■ (a) Tyra informed his trial counsel that his brother Kenneth served a prison sentence as a result of a conviction in Fountain County. Either trial counsel or his intern called Fountain County in an attempt to identify that conviction, but were informed that no such conviction existed. At the post-conviction hearing, Tyra produced a copy of the commitment.

The prosecutor, while questioning Kenneth on the terms of the aborted plea

agreement, asked "[b]ecause you have no prior convictions on the record, you could get a suspended sentence, couldn't you?" Tyra refers us to this point in the record for the proposition that "Kenneth Tyra's statement that he had no prior conviction on his record went unchallenged."

While this exchange certainly implies that Kenneth had a clean record, it also indicates that the prosecutor was ignorant of Kenneth's prior conviction. Trial counsel attempted to determine whether Kenneth had been convicted of an impeachable offense but received erroneous information from the court clerk that the conviction did not exist. He had access to the prosecutor's files, and from the exchange quoted above, it appears the prosecution was also unaware of Kenneth's earlier run-in with the law. Counsel made a reasonable, good-faith attempt to confirm Tyra's account of Kenneth's criminal record. His failure to locate the information does not amount to ineffectiveness.

■ (b) Trial counsel did not bring to the jury's attention the discrepancy between Kenneth's statement that Tyra told him there was a motorcycle in the garage (and therefore Tyra must have entered the garage where gasoline was stored) and the Foxworthy's insurance claim which did not list a motorcycle. In response to questioning at the post-conviction hearing, counsel testified that he didn't recall if he ever checked with the Foxworthy's insurance company to determine whether they made a claim for loss of a motorcycle.

Counsel also did not impeach Kenneth with eight inconsistencies between Kenneth's two pre-trial statements. When asked about his failure to employ this method of impeachment, counsel responded that, although he didn't specifically recall, it was likely that he chose not to point out every discrepancy in the statements because the statements were very damaging to his client and he didn't want to unduly emphasize them.

Decisions such as whether to check on the motorcycle or whether to point out each discrepancy in the statements are tactical in nature and while in hindsight might ap-pear to be poor decisions, are nevertheless entitled to deferential treatment. As our supreme court pointed out, "[i]f every mistake or oversight made in the preparation of a case or at trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then a majority of all criminal defendants might validly assert such a claim." *Smith v. State* (1979), 272 Ind. 216, 218, 396 N.E.2d 898, 900.

## STOP AND SEARCH

■ The next challenge to counsel's representation involves the search conducted by Stonebraker. Tyra's theory is that because he and Kenneth refused the consensual search, Stonebraker decided to accomplish his goal under the ruse of a "pat down" search and counsel was ineffective for failing to suppress this evidence. Stonebraker testified as follows as trial:

A We started to return to headquarters when we ran into Greg and Kenneth Tyra walking down Valley Drive.

Q Now, when you say you ran into them, how do you mean that?

A We were headed north on Valley Drive and observed them wal[k]ing in a northerly—northerly direction on Valley Drive.

Q Okay. Did you recognize them?

A Yes, sir, I did.

Q And what did you do when you saw them?

A We first asked them for some identification to verify that that's who they were, and what they were doing in the immediate area.

 \* \* \* \* \* \*

Q Okay. So, what happened then? What did you say and what was done?

A I also asked Kenneth, who had a bandage on his right thumb, what had happened to his thumb, and he told me he had cut it doing dishes.

 \* \* \* \* \* \*

Q Now, was there a reason that you were interested in whether either of

the Tyras had a cut or a wound of any sort?

A The reason we were interested because at the entry of the basement window we found blood on the window. Also, there was blood found by Lieutenant Gullion on examing [sic] evidence in the upstairs, I believe, of the residence, or throughout the residence.

\* \* \* \* \* \*

A We again asked them what they were doing in the area. They said shoveling snow and we went through why they didn't have shovels. They said they were trying to line up some jobs for later, then they would get their snow shovels. We then exited the car and I asked them if they would mind dumping the contents of their pockets onto the car, and also advised them they did not have to do so if they wish[ed] not to, and they declined to do so. I advised at that time before we talked any further I would like to pat them down to see if they had any weapons.

Q Okay. And did you do so?

A Yes, Sir.

Q What was the result?

A As I started towards Greg to give him a pat down, he advised that he had a weapon in his pocket and asid [sic] it was a starter pistol, and he slowly removed it from his pocket, and at that—.

Q Did you examine it?

A Yes, Sir.

Q What did it look like?

A It was a blank starter pistol, blue steel, with a white (inaudible).

Q Okay. People sometimes call blue steel a black color.

A Yes, Sir.

Q Okay. What happened then? What did you say and do?

A I continued to pat him down at that time. I felt something else in his trouser pocket and asked if he would—or I removed it from his trouser pocket and found it to be a wristwatch, and I also felt a smaller object in his pocket and asked that he remove it at that time, which he did.

Q What was it?

A It was a lapel pin.

Q Okay. What else? What happened next and what did you do?

A After I had patted Greg down, I turned to Kenneth, and by that time he was already lying—laying articles out on the trunk of the car at that time.

Tyra makes a convincing argument based on the above colloquy that the search conducted by Stonebraker was improper. However, because the search was not challenged, either at a suppression hearing or at trial, we do not have the typical adversarial examination of involved participants. Instead, we simply have Stonebraker's account of the investigatory steps preceding the arrest. We must defer to the judgment of trial counsel that he had two reasons for not challenging the search: he did not believe such a challenge would be successful and his strategy was to admit possession of the property but deny all knowledge of the burglary and arson. At the post-conviction hearing, both Tyra's trial counsel and Kenneth's trial counsel testified that they did not believe a challenge to the search would be successful. Tyra's counsel personally interviewed the officers involved in the search and presumably Kenneth's counsel did likewise. They were in a position superior to that of this court to evaluate the likelihood of a successful motion to suppress. Further, trial counsel hoped the jury would believe Kenneth's original version of events, that he alone committed the burglary and that Tyra was not involved except to the extent of helping Kenneth dispose of the goods. Counsel, after consideration, decided against challenging the search. We will not second-guess his decision and it does not amount to ineffective assistance of counsel.

## ALTERNATE JUROR

The trial judge failed to instruct the alternate juror not to participate in deliberations and at that time counsel neither objected nor called this to the attention of the court. Tyra speculates that the alternate participated in the deliberations

and therefore compromised the verdict. No evidence was presented at the post-conviction hearing to support the contention that the alternate was more than an observer during deliberations. While it was error for the court not to properly instruct the alternate, since there was no resulting prejudice shown, it is deemed harmless error.

## IRRELEVANT AND PREJUDICIAL TESTIMONY

 The final claim of error at trial emanates from counsel's failure to object to both the testimony of the firemen who battled the fire at the Foxworthy residence and the testimony of the Foxworthys' son. The firemen testified that it was a dangerous fire that could have killed a firefighter and that if the residents had been home during the fire "more and likely they would have been dead." Foxworthys' son testified about the effect of the fire on his parents as follows:

> Well, the—effects were both emotionally and physically have been considerable on them. My folks are in their mid–70's and to watch everything—the memories and everything they had go up in smoke is— has traumatic effect on them emotionally. My father fell while he was in the house after the fire, injured his left shoulder, is still having problems with it, and, of course, all the work involved in trying to salvage what could be salvaged and—and the inconvenience of living in motel rooms—and all the moving back in is just—just enormous on them....

Tyra did not dispute the severity of the fire or the loss experienced by the Foxworthys. Instead, his defense was that he was not involved in the crime. Trial counsel testified at the post-conviction hearing that he believed the trial judge was sympathetic to this type of testimony and would have overruled any objection. His decision not to object to these responses was a matter of trial strategy. Given the nature of his defense, constantly objecting to testimony of this nature might alienate the jury without providing any benefit to Tyra.

## CUMULATIVE EFFECT OF ERRORS

We are urged to find that the cumulative effect of all of counsel's errors renders the result of the trial unreliable. Because the majority of the errors alleged by Tyra were found to be matters of trial strategy and therefore not error, looking at them simultaneously does not alter their nature. As our supreme court held in *Cochran v. State* (1983), Ind., 445 N.E.2d 974, "[c]hoices of trial strategies and tactics are insufficient to establish ineffective representation even though others may have made different choices and such choices may be subject to criticism."

## MOTION TO CORRECT ERRORS

A further issue raised for our consideration is referred to by Tyra as error occurring on direct appeal. He urges us to find that trial counsel's failure to include two issues in the motion to correct error amounted to ineffective assistance of counsel on direct appeal.

 (a) Kenneth entered into a plea agreement with the State, but the offer was subsequently withdrawn. Because Kenneth was testifying adversely to Tyra, his own brother, it was important to establish on cross-examination that Kenneth stood to gain by implicating Tyra in the burglary and arson. Trial counsel accomplished this goal by introducing a copy of the revoked plea agreement. While that agreement is not present in the record, testimony at trial and at the post-conviction hearing established that it contained a standard clause requiring the defendant to pass a polygraph test or face withdrawal of the plea offer.

Trial counsel extensively questioned Kenneth about the terms of the plea agreement and its subsequent withdrawal. After pursuing this line of questioning, counsel made an oral motion in limine requesting that the State not be permitted to mention the results of the polygraph test. His motion and subsequent objections were denied and the State was permitted to ask the following question concerning the aborted plea agreement: "And we nullified it because you flunked the polygraph on the arson,

didn't we?" The trial court erred by overruling trial counsel's objection to the introduction of the results of the polygraph test.

Because of their inherent unreliability combined with their likelihood of unduly influencing a jury's decision, references by witnesses or counsel to polygraph test results are inadmissible absent waiver or stipulation of the parties. *Pavone v. State* (1980), 273 Ind. 162, 402 N.E.2d 976. Motions in limine are appropriate with respect to such references. *Id.* Where a trial hinges on a question of credibility, it is reversible error to deny a motion for mistrial after a damaging reference to polygraph results. *Baker v. State* (1987), Ind., 506 N.E.2d 817.

*Smith v. State* (1989), Ind., 547 N.E.2d 817, 820–21.

Tyra alleges, and the dissent agrees, that trial counsel's failure to raise this issue in the motion to correct errors amounted to ineffective assistance. We disagree. At the post-conviction hearing, trial counsel testified that he didn't raise the polygraph issue on appeal because once his objection was overruled, he "attempted to use that evidence to our advantage by putting forward the theory that Ken was a liar, and therefore, his testimony was not credi[ble]." He testified that he also raised the issue of the failed polygraph in final argument in an effort to show that Kenneth's testimony was so incredible that even the prosecutor would not deal with him.

While preparing the motion to correct error, trial counsel decided that introduction of the polygraph results had actually been beneficial to the case even though he had initially attempted to have them suppressed. He therefore did not raise the issue in the motion to correct errors because he had used the polygraph result to his advantage and because he believed an appeal had a greater chance of success if fewer issues were raised. Counsel did not fail to raise the polygraph issue because of oversight or inexperience. Rather he made a deliberate decision to omit it. A decision concerning which issues should be raised in a motion to correct errors is a matter of

trial strategy and is insufficient to establish ineffective assistance of counsel. *Cochran, supra.*

Further, we believe that the issue of prejudice to Tyra's defense is not as clear cut as the dissent contends. Trial counsel brought the polygraph test into issue by introducing the plea agreement which required successful completion of a polygraph examination. Under similar circumstances, our Supreme Court declined to find defense counsel incompetent. *Swan v. State* (1984), Ind., 462 N.E.2d 68. Trial counsel extensively questioned Kenneth about the terms of the plea agreement and its subsequent withdrawal. Tyra was able to use the plea agreement and the polygraph language to imply that Kenneth failed the polygraph, causing the State to withdraw the plea offer. This certainly reflected negatively on Kenneth's credibility. The State was permitted to ask Kenneth if he "flunked the polygraph on the arson." Tyra characterizes this information as establishing that Kenneth testified truthfully about the burglary and Tyra's participation but only lied about his knowledge of the arson. This is but one potential interpretation. The jury might also have presumed that, since Kenneth admitted the burglary, he was only questioned about the arson and answered untruthfully. Tyra benefitted from introduction of the revoked plea agreement and the inference that it was revoked because Kenneth was lying. The "flunked on the arson" was not necessarily beneficial but neither was it conclusively prejudicial. The evidence of prejudice is not so overwhelming that it rises to the level of fundamental error. The decision to omit the issue from the motion to correct error was a legitimate trial tactic and counsel will not be considered deficient simply because in hindsight the decision seems unwise.

■ (b) The same standard applies to counsel's decision not to raise the improper questioning of Tyra's younger brother, Jamie, in the motion to correct errors. The prosecutor asked Jamie whether he disliked prosecutors in light of past prosecutions of his brothers and due to the on-going at-

tempt by the prosecutor to have Jamie committed to Boys School. Counsel's objections were overruled. He testified that he did not believe the issue was viable on appeal because the ruling was only reviewable as an abuse of discretion. Again, this was a strategic decision and will not support a claim of ineffective assistance of counsel.

## APPELLATE COUNSEL

■ The final issue raised is whether appellate counsel provided ineffective representation by failing to address the polygraph issue and the cross-examination of Jamie Tyra on direct appeal. Appellate counsel testified that he did not believe either issue amounted to fundamental error. He further testified that it was his opinion that it was not in a client's best interest to raise ineffective assistance on direct appeal. He explained that because of the limitations of the format, i.e. inability to present additional evidence on the issue, he believed ineffective assistance of trial counsel was best raised at the post-conviction stage. Appellate counsel will not be deemed ineffective for failing to raise issues which in his professional judgment appear frivolous and unavailing. *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, 1207, *cert. denied,* —— U.S. ——, 110 S.Ct. 268, 107 L.Ed.2d 218.

## CONCLUSION

Tyra was not entitled to a perfect trial. He was entitled to effective representation of counsel. We agree with the post-conviction court's finding that trial counsel "provided a performance for petitioner that falls within the broad range of acceptable prevailing professional norms of reasonable, competent counsel, and no prejudice resulted sufficient to undermine the reliability of the verdict per *Strickland v. Washington* (1984) [466 U.S. 668], 104 S.Ct. 2052 [80 L.Ed.2d 674]." Likewise, appellate counsel was not ineffective for failing to raise issues on direct appeal. He made a tactical decision to forgo raising the issues either as fundamental error or under the guise of ineffective assistance of counsel. Therefore, his decision will not be second guessed on appeal. The denial of post-conviction relief is affirmed.

AFFIRMED.

CONOVER, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I respectfully dissent and would reverse the ruling of the post-conviction court and remand this cause for new trial on the charges of burglary and arson.

Originally, Defendant Gregory Tyra was charged as a co-defendant along with his brother Kenneth Tyra, for the crimes of burglary, arson and theft. However, their trials were severed and Kenneth entered a plea agreement with the State. In part, the agreement provided that Kenneth would plead guilty to burglary and give a statement concerning his knowledge of the charged offenses. In exchange the State agreed to dismiss the counts of arson and theft. The agreement also required Kenneth to submit to and pass a polygraph examination. He "flunked" a portion of the exam and the plea was revoked.

On direct examination by the State, Kenneth testified he and his brother Gregory broke and entered the residence in question and took several items including a gold watch and a radio. Kenneth denied setting the residence afire.

On cross-examination defendant Tyra's trial counsel introduced the plea agreement into evidence and proceeded to impeach Kenneth's testimony by questioning him concerning the terms of the agreement. On re-direct examination the prosecutor elicited testimony from Kenneth that the plea agreement had been revoked because he had failed to pass a polygraph examination. The following exchange occurred:

Q. Now, another provision of that agreement was that you would have to take a polygraph to prove that you had been honest in that statement.

A. Correct.

BY [DEFENSE COUNSEL]: Objection as to relevance.

(*Record* at 205)

BY THE COURT: That objection's overruled.

Q. Isn't that correct?

A. Correct.

BY THE COURT: You're referring to what they call a clean-up statement.

BY THE WITNESS: Right.

Q. And you took such a polygraph, didn't you?

A. Yes, I did.

BY [DEFENSE COUNSEL]: Same objection.

BY THE COURT: That objection will be overruled.

Q. That was given the same day as the statement by Sergeant Dan Pope, Tippecanoe County Sheriff's Department.

A. Yes, it was.

BY [DEFENSE COUNSEL]: Same objection. Judge, could I—?

BY THE COURT: We'll show a continuing objection to this line of testimony, and the same ruling.

Q. Now, isn't it true that another provision of that agreement was that we could, as Prosecutors, nullify the agreement if you hadn't lived up to your end of the bargain, right?

A. Correct.

Q. And we did nullify it, didn't we?

(*Record* at 206)

A. Yes, you did.

Q. And we nullified it because you flunked the polygraph on the arson, didn't we?

A. I guess so, yes.

(*Record* at 207).

Counsel made no motion for mistrial, no motion to strike, and no motion to admonish the jury to disregard the polygraph remark.

The law in this jurisdiction is well settled, that because of their inherent unreliability combined with their likelihood of unduly influencing a jury's decision, reference by witnesses or counsel to polygraph test results is inadmissible in criminal prosecutions absent a waiver or stipulation by the parties. *Smith v. State* (1989), Ind., 547 N.E.2d 817, 820 *citing Pavone v. State* (1980), 273 Ind. 162, 402 N.E.2d 976.

In the case before us there was no waiver or stipulation by the parties and reference to the polygraph test was not inadvertent. *See Beal v. State* (1983), Ind., 453 N.E.2d 190 (witness' unsolicited, voluntary reference to polygraph test did not require reversal). The prosecutor not only questioned Kenneth about the result of the polygraph but specifically mentioned that he "flunked the polygraph *on the arson*...." It is clear that the prosecutor was attempting to reinforce Kenneth's credibility by demonstrating that he had taken a polygraph test and that he had testified truthfully, especially concerning the burglary, even though he may have lied concerning the arson. In *Williams v. State* (1978), 268 Ind. 365, 375 N.E.2d 226, 227, our Supreme Court held:

> When, as in the case at bar, the State seeks to establish that a witness has taken a polygraph examination in relation to testimony given at trial, there is a high probability that the jury will conclude that the witness is telling the truth and that the accused merely seeks to suppress that truth. This result ... is extremely prejudicial to the accused, especially as in the case at bar where the testimony is essential to link the accused to the crime charged.

The testimony of Kenneth Tyra was critical to the State's case. The State called ten (10) witnesses to testify on its behalf. However, none of the witnesses, with the exception of Kenneth, linked Gregory Tyra to the crimes of burglary and arson. Although the evidence was sufficient to sustain Tyra's conviction for theft, *see Tyra v. State* (1987), Ind., 506 N.E.2d 1100, Tyra's convictions for burglary and arson could not have been sustained absent the testimony of his brother. Accordingly, Kenneth Tyra's credibility was a critical factor at trial. Under the circumstances, reference to the polygraph examination was inadmissible. Where a trial hinges upon a question of credibility, it is reversible error to deny a motion for mistrial after a damag-

ing reference to polygraph results. *Smith, supra,* at 821, *citing Baker v. State* (1987), Ind., 506 N.E.2d 817.

At the post-conviction hearing, trial counsel testified he did not preserve in his motion to correct errors the issue of reference to the polygraph examination because of a strategy to show that Kenneth Tyra was a liar and his testimony therefore was not credible. I would reject counsel's rationale. It is true this court will not speculate about what may have been the most advantageous strategy, and that isolated bad tactics or inexperience do not necessarily amount to ineffective assistance of counsel. *McChristion v. State* (1987), Ind., 511 N.E.2d 297; *Elliott v. State* (1984), Ind., 465 N.E.2d 707. However, failure to preserve for appeal an issue of reversible error should not be condoned by this court as an acceptable trial strategy or tactic. Moreover, the same problems are present in the admission of polygraph tests whether the purpose of the admission is to reinforce or to attack the witness' credibility. These problems basically involve the unreliability of polygraph examinations and the danger that juries will give undue weight to their results. *Pavone, supra.*

I do not suggest that the mere mention of a polygraph examination automatically constitutes reversible error. Indeed, the facts in this case are similar to the facts in the case of *Swan v. State* (1984), Ind., 462 N.E.2d 68. In *Swan,* the defendant appealed the denial of his post-conviction petition arguing ineffectiveness of counsel. A key state's witness, an accomplice of defendant, testified to defendant's role in a robbery and murder. The witness' plea bargain agreement which contained reference to a polygraph examination was entered into evidence without objection. Defendant argued that his trial counsel should have either objected to the introduction of the plea, or attempted to excise the reference to polygraphs. Our supreme court recognized that generally the mention that a witness has taken a polygraph examination, absent some form of waiver, will not be permitted. However, the court noted, trial counsel considered the introduction of the plea bargain to be important to his

client's defense, and "the state's case did not rest exclusively upon the testimony and credibility of [the state's key witness]". *Id.* at 71.

In the case before us not only was the witness' plea bargain agreement, with its reference to the polygraph examination, introduced into evidence, but, in addition, the witness testified concerning the results. Unlike *Swan,* here, the State's case regarding the crimes of burglary and arson rested exclusively upon the testimony and credibility of Kenneth Tyra, the State's key witness. Any presumed importance to Gregory Tyra's defense in mentioning the results of the polygraph examination was vastly outweighed by its undue prejudice.

I believe trial counsel's performance in failing to preserve for appellate review an issue of reversible error was deficient and that Tyra's defense was thereby prejudiced.

In like fashion appellate counsel's performance was also deficient. On appeal, appellate counsel argued only those issues which were set forth in trial counsel's motion to correct errors. However, the motion was inadequate; it failed to include the trial court's reversible error in allowing the State to introduce evidence of the polygraph examination. Further, there was no Belated Motion to Correct Error filed addressing this inadequacy. Ind. Post–Conviction Rule 2(2).

There is no dispute that appellate counsel is not required to argue meritless contentions or contentions which defy the evidence and to which no genuine argument can be made. *Williams v. State* (1986), Ind., 487 N.E.2d 441, 443. However, appellate counsel is required to examine the record and properly preserve for review substantial appealable issues. Failure to do so constitutes ineffective assistance of appellate counsel. *Propes v. State* (1990), Ind., 550 N.E.2d 755; *Davis v. State* (1975), 164 Ind.App. 331, 328 N.E.2d 768.

For the reasons stated, I would reverse the ruling of the post-conviction court and

remand this cause for new trial on the charges of burglary and arson.