Curtis L. HOVENDEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 92A03–9903–CR–100.

Court of Appeals of Indiana.

Dec. 28, 1999.

---

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Curtis L. Hovenden appeals his conviction after a jury trial of sexual misconduct with a minor, a Class B felony. He raises one issue, which we restate as whether the trial court erred in allowing into evidence, over Hovenden's objection, the results of polygraph tests of J.H., the victim, and Hovenden's wife, Sherie Hovenden.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

In July of 1997, J.H., who was 14 years old, visited her aunt, Sherie Hovenden, and her aunt's husband, Hovenden. During that visit and on two subsequent occasions, Hovenden had sexual intercourse with J.H.

In November of 1997, J.H. told a school counselor about Hovenden's actions. The police were notified and Hovenden was charged with sexual misconduct with a minor. On March 31, 1998, Hovenden's attorney wrote to the Whitley County Prosecuting Attorney, suggesting that Hovenden, Sherie Hovenden and J.H. undergo polygraph tests. The letter stated in part: "We would of course expect that the State and Mr. Hovenden stipulate that the results of all said polygraph examinations be admissible at trial." (R. at 203.) The prosecuting attorney agreed to the testing and to the admissibility of the three polygraph results. On May 6, 1998, Hovenden's counsel wrote the prosecuting attorney, stating:

[Your office] left a message that you would be getting a signed stipulation from the victim (or her mother on her behalf since she is a minor) agreeing to the admissibility of the victim's polygraph examination results. Although I

---

1. We deny Hovenden's request for oral argument.

know that you will make every effort to secure that waiver, I have less confidence that the victim will actually sign it. Therefore, I'm a little apprehensive about having Mr. Hovenden submit to the polygraph examination on May 11, 1998, without having a signed copy of the waiver in hand.

. . . .

Secondly, in our correspondence early last month, I thought we had agreed that Sherie Hovenden would also submit to a polygraph examination and agree to its admissibility in this matter. . . . Sherie's polygraph examination is much more important, since she was present at the time of the alleged incident and since it is my client's belief that she is only making these allegations as a means of influencing the outcome of the current custody dispute between herself and Mr. Hovenden.

(R. at 219.)

On May 8, 1998, the prosecutor's office notified Hovenden's counsel as follows:

For your information, I communicated this morning, by telephone, with Sherie Hovenden and [J.H.'s mother]. Sherie has willingly agreed to submit to a polygraph examination and [J.H.'s mother] has agreed to submit [J.H.] to a polygraph examination. . . . They are willing to execute the necessary stipulations relative to their testimony.

(R. at 222.) On May 11, 1998, Hovenden, his attorney and the prosecuting attorney signed a "Waiver of Objection to Use of Results of Polygraph." (R. at 205–06.) That document provided that:

I, Curtis L. Hovenden, being fully and adequately advised and represented by counsel and understanding fully my right to remain silent, HEREBY EXPRESSLY WAIVE ANY AND ALL OBJECTIONS to the use of the results of a polygraph (lie detector) test which I am about to take.

I UNDERSTAND FURTHER that the results of this polygraph (lie detector) test may be used in Court against me or for me, that it may become an exhibit in any trial in which I may be involved.

I FURTHER STIPULATE, UNDERSTAND AND AGREE that the person administering said polygraph (lie detector) test, may explain, analyze or discuss all or any portion of said test in open court, by interrogatories or by deposition.

I FURTHER UNDERSTAND that this is a waiver of any constitutional right or privilege I may now have or may claim at any time in the future which involves the use of the results of the polygraph (lie detector) test which I am about to take.

I UNDERSTAND FURTHER that I have a right to remain silent and not take the test, that I have a right to the advice and consultation of counsel prior to my signing this document, that if I do not have funds to employ counsel the court will appoint counsel to advise me before I sign the document and that the results of this test, including the test itself and this waiver may be introduced into evidence in Court either against me or for me.

I therefore, stipulate and agree with the State of Indiana by John W. Whiteleather, Jr., Prosecuting Attorney for the 82nd Judicial Circuit, that the questions of the examiner, my answers and the record of my reactions to said questions of the examiner, any interrogation or other things relating to said examination including the results and the opinions of the examiner relating to said examination, be admitted as competent evidence in any criminal trial arising out of actions allegedly committed by me; either on behalf of the State of Indiana or on behalf of myself as defendant and that no objections thereto will be imposed by myself as defendant of the State of Indiana.

(R. at 205–06.)

On May 15, 1998, J.H. and Sherie Hovenden signed a Stipulation which provided:

Comes now the State of Indiana by John W. Whiteleather, Jr., Prosecuting Attorney, [J.H.] and Sherie Hovenden, in person and the parties now stipulate and agree to each and all of the following:

1. Curtis L. Hovenden and his counsel ... have requested that [J.H.] and Sherie Hovenden be given polygraph examinations by Robert Brinson.

2. Robert Brinson is a qualified polygraph examiner, the polygraph being an instrument used as a means for detecting deception, and Robert Brinson is further qualified in interpreting the results of the polygraph examination as performed by him.

3. The questions propounded by Robert Brinson, the answers of [J.H.] and Sherie Hovenden to those questions, the results of the polygraph examination and the testimony of Robert Brinson relative to his interpretations of the results of the polygraph examination may be received in evidence at any trial or hearing of Curtis Hovenden without objection by either party.

[J.H.] and Sherie Hovenden hereby specifically waive any privileges they may have relative to the introduction of the above-outlined evidence.

(R. at 211.) This Stipulation was signed by the Chief Deputy Prosecuting Attorney, Sherie Hovenden, J.H., and J.H.'s mother. Neither Hovenden nor his defense attorney signed this Stipulation.

All three polygraph examinations were taken. According to the polygraph examiner, Hovenden's responses to the following two relevant questions were deceptive: (1) "Did you ever have sexual intercourse with [J.H.]?" and (2) "Did your penis ever touch [J.H.'s] vagina." (R. at 338.) The polygraph test results of both Sherie Hovenden and J.H. were interpreted as truthful by the polygraph examiner.

Hovenden filed a motion in limine to exclude at trial the results of the polygraph tests given Sherie Hovenden and J.H. After hearing oral argument, the trial court denied the motion. At trial, J.H.,

Sherie Hovenden, the polygraph examiner and Hovenden all testified, and the results of all three polygraph examinations were admitted into evidence. The results of the polygraph examinations given J.H. and Sherie Hovenden were admitted over Hovenden's objection. The jury returned a verdict of guilty on the sole count of sexual misconduct with a minor.

## DISCUSSION AND DECISION

■ Absent some form of waiver or stipulation by the parties, the results of polygraph examinations administered to criminal defendants are not admissible. *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind. 1996). In *Sanchez*, our supreme court stated that:

[t]here are four prerequisites which must be met before the trial court may admit polygraph test results: 1) that the prosecutor, defendant, and defense counsel all sign a written stipulation providing for the defendant's submission to the examination and for the subsequent admission at trial of the results; 2) that notwithstanding the stipulation, the admissibility of the test results is at the trial court's discretion regarding the examiner's qualifications and the test conditions; 3) that the opposing party shall have the right to cross-examine the polygraph examiner if his graphs and opinion are offered in evidence; and 4) that the jury be instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given such testimony.

*Id.*

■ A similar rule applies where the polygraph test results sought to be admitted are of a witness and not of the defendant. In *Pavone v. State*, 273 Ind. 162, 402 N.E.2d 976 (1980), the State's lead witness waived his protection against self-incrimination and submitted to a polygraph examination. The trial court grant-

ed the State's motion in limine prohibiting the defendant from mentioning the polygraph results of the State's witness. On review, our supreme court stated "[s]ince no written enforceable stipulation was made between the parties, the evidence of polygraph tests and results was inadmissible. Had there been such a stipulation it remains within the discretion of the trial court to admit or to refuse to admit such results." *Id.* at 166, 402 N.E.2d at 979 (citation omitted). What is a "written enforceable stipulation" is the question before us in this case.

Hovenden contends that since neither he nor his counsel signed the Stipulation signed by J.H., her mother, and Sherie Hovenden, there was no valid stipulation as to the use and admissibility of the polygraph test results of J.H. and Sherie Hovenden. The State contends that even though that Stipulation was not signed by Hovenden or his defense counsel, there was an actual agreement to the use of all of the polygraph test results as evidenced by the correspondence between Hovenden's counsel and the prosecuting attorney.

■ There is no question that Hovenden's polygraph results were properly admitted into evidence. The letters from Hovenden's counsel and from the prosecutor's office make it clear that Hovenden's agreements to take a polygraph test and to allow the results to be admitted at trial were tied to the testing of and admissibility of the results of the tests of J.H. and Sherie Hovenden. In a case such as this, where the parties clearly intend that the results of all three polygraph results be admissible into evidence, we find that the absence of signature by Hovenden or his counsel on the witnesses' Stipulation does not render inadmissible the polygraph test results of the witnesses.

The Wisconsin Supreme Court addressed an almost identical situation in *Pickens v. State*, 96 Wis.2d 549, 292 N.W.2d 601, 613 (1980), *overruled on other grounds, State v. Klessig*, 211 Wis.2d 194, 564 N.W.2d 716 (1997). There, the defen-

dant contended that the trial court erred in admitting testimony regarding a polygraph test of a complaining witness because there was no valid stipulation. The court noted the requirement that there be a written stipulation signed by the prosecutor, defense counsel and the person taking a polygraph test providing for the witness' submission to the test and for the subsequent admission at trial of the results and the examiner's opinion thereon on behalf of either the defendant or the State. It called the written stipulation signed by the appropriate parties "an essential prerequisite to the admission of such evidence at trial." *Id.*

The defendant in *Pickens* contended that the results of the test administered to the complaining witness should not have been admitted because neither the defendant nor his attorney had signed the stipulation relating to the test of the witness. The court disagreed, stating:

While it is true that the stipulation providing for the admission of the re-sults of polygraph examination to be administered to the complaining witness was not signed by defense counsel, the stipulation providing for the admission of the defendant's test results contained as a precondition the requirement that the complaining witness also take the test under the same terms and conditions. This stipulation was signed by the defendant and his then attorney, as well as the prosecutor. Pursuant to the first stipulation the second stipulation was obtained which provided for the complaining witness to submit to a polygraph examination the results of which were to be admissible. Apparently due to an oversight, this stipulation was signed only by the complaining witness and the prosecutor.

However, despite the requirement of a signed stipulation, we do not view the oversight as fatal. Because each of the stipulations expressly refers to the other and incorporates each other's provisions, we conclude that both can be properly

regarded as but one stipulation. Furthermore, because all of the required signatures appear on the two documents taken as a whole, we conclude that the trial court did not err in ruling that the test results were admissible against the defendant.

*Id.* Like the *Pickens* defendant, Hovenden sought assurances that J.H. and Sherie Hovenden would submit to a polygraph examination before he agreed to his own examination. Pursuant to Hovenden's stipulation, a stipulation was obtained providing for a polygraph examination of the victim and Sherie Hovenden, and like the *Pickens* stipulations, it is apparent from the exchange of documents regarding the polygraph examinations that Hovenden's submission to a polygraph examination was tied to the witnesses' agreements to be tested. The trial court did not err in admitting the test results despite the absence of Hovenden's signature on one of the documents.

Even had the results of the witnesses' polygraph tests been improperly admitted, the error was harmless. Substantial evidence of Hovenden's guilt was presented to the jury, including J.H.'s testimony at trial and her statement to the police, which were substantially identical. The jury also heard Sherie Hovenden's testimony that she was suspicious of Hovenden's contact with J.H. and that she witnessed one questionable contact between Hovenden and J.H. Evidence of Hovenden's own polygraph test result failure was presented to the jury along with several versions of Hovenden's story. We cannot say that the admission of the witnesses' polygraph test results had a substantial effect on Hovenden's rights. *See Willey v. State,* 712 N.E.2d 434, 440 (Ind. 1999).

## CONCLUSION

The trial court properly admitted the results of polygraph tests of the witnesses against Hovenden, and its judgment is affirmed.

BAKER, J., and BAILEY, J., concur.